# Tabuteau *v.* London Guarantee & Accident Company, Limited, Appellant.

Argued Nov. 27, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Thomas E. Comber, Jr.,* with him *Pepper, Bodine, Stokes & Schoch,* for appellant.

*David F. Kaliner,* for appellee.

OPINION BY MR. JUSTICE DREW, January 2, 1945:

This is an action in assumpsit upon an accident insurance policy issued to plaintiff by defendant. The policy provides that certain weekly payments would be made for total disability accidentally sustained, and certain lesser payments for partial disability, if the insured be disabled by accidental injuries "to the extent that he is unable to perform one or more important daily duties pertaining to his occupation." Plaintiff claims that he accidentally sustained personal injuries, consisting of a double incomplete inguinal hernia, which

totally disabled him from April 5, 1942, to April 7, 1942, and partially disabled him, within the meaning of the policy, from April 7, 1942, to May 14, 1943, when he was operated on for that condition. Defendant denied the condition resulted from an accident and contends it was the result of faulty development of the body of plaintiff.

A verdict was rendered for plaintiff for the full amount of his claim, $3,078.00; and after defendant's motions for judgment n.o.v. and a new trial had been refused, and judgment entered upon the verdict, defendant appealed.

Plaintiff testified that on Sunday afternoon, April 5, 1942, he was walking on the Parkway, between 15th and 16th Streets, in Philadelphia, when he stepped on something on the sidewalk, "it was uneven—unlevel— . . . I made a jump—it was as though I stepped on a live electric wire. Naturally, I tried to get my balance. When I landed on my feet I felt as though I was going to fall, but I didn't. I felt pain in the lower part of my abdomen, and I realized I could hardly walk. I put my hands one on each groin, and I went home, and I felt some kind of sickness . . . nausea." He said that when he arrived home he noticed "Two little swellings on the groins", and that he rested that day, and the next morning when he attempted to rehearse with the orchestra he "felt a terrible stab in the right side." Plaintiff is a distinguished musician, the first oboeist of the Philadelphia Orchestra, of which he has been a member for many years. He testified that an oboe is a wood-wind instrument and that in order "to obtain emotion of tone it takes great physical effort." Being unable to play his instrument, he went home, and on April 7th saw his doctor, and was informed of his condition and advised to wear a truss.

The truss was some comfort but not satisfactory, and plaintiff continued to suffer pain when blowing the oboe. He could only perform partially and had a substitute to take his place when he could not continue.

Before the accident he was required to practice two to three hours a day, and this he could not do after the accident because of pain in the groin when he exerted pressure by playing the oboe. He had previously performed at four or five concerts a week during the season, but he could not do this after the accident. He lost movie and radio work because of his injury. His doctor testified that the truss did not correct his condition and he advised an operation, which was performed. Before the accident plaintiff was in good health, and had never had pain in the inguinal region. During the period of incapacity he had no other disabling illness, except the hernia condition.

Defendant contends that plaintiff did not make out a case—this for the reason that his doctor did not testify that in his professional opinion the accident described brought about the hernia. In answer to a long hypothetical question the doctor said: "A jar such as he has described can bring about that condition . . . It is sufficient to bring it about." In answer to the question: "Can you state whether or not, in your opinion, that condition was due to that jar that he sustained in the fall which he had", the Doctor replied: "It was sufficient to bring about that condition." Defendant's position would be well taken if this were a case in which expert testimony *must* be relied upon to show the connection between an alleged cause and a certain effect, as in the following cases cited by defendant: *Fink v. Sheldon Axle & Spring Co.*, 270 Pa. 476; 113 A. 666; *McCrosson v. Phila. Rapid Transit Co.*, 283 Pa. 492, 129 A. 568; *Anderson v. Baxter*, 285 Pa. 443, 132 A. 358; *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256. In those cases expert testimony was relied upon to show that a given result came from an assigned cause, and it was uniformly held that expert witnesses would have to testify, not that the condition of claimant *might* have, or *could* have, or even *probably did* come from the accident, but that "it is their professional opinion the result

in question most probably came from the cause alleged."

This is not such a case. Indeed, the issue here is determined by a distinct separate line of cases which counsel for defendant has completely overlooked. They hold that expert testimony is not necessary where death (or injury) is so immediately and directly, or naturally and probably, the result of the accident that the connection between them does not depend solely on the testimony of professional or expert witnesses: *Davis v. Davis,* 80 Pa. Superior Ct. 343; *McCoy v. Spriggs,* 102 Pa. Superior Ct. 500, 157 A. 523.

Plaintiff produced direct and competent evidence which, if believed, clearly established the causal relationship between the accident and the injuries. Plaintiff's own testimony is sufficient to support the finding of the jury that he suffered an accidental injury within the terms of the policy, resulting in disability.

In *Mohr v. Desimone & Sayers,* 110 Pa. Superior Ct. 44, 49, 167 A. 504, the court said: "It has frequently been held that where the disability complained of is the natural and probable result of the injuries, the fact-finding body may be permitted to so find, even in the entire absence of expert opinion." In the instant case the sequence of events strongly indicates a causal connection between the entirely unexpected injury and the continuous disability following it. Plaintiff had been in excellent health, and had done the same work for thirty years before the accident. But immediately after the accident he was disabled by a perfectly obvious injury which a layman could diagnose, and he was unable to work as before. The accident and the injury were so closely connected, and so quickly apparent, that the circumstances themselves justified the submission to the jury: *Stracka v. Mosko,* 99 Pa. Superior Ct. 463.

In *Utzman v. Penna. Rubber Co.,* 96 Pa. Superior Ct. 463, the claimant had worked as a laborer for 39 years, doing heavy work. While doing some lifting, he experienced a sudden pain in the groin, which, upon

examination, turned out to be a hernia. Two doctors, testifying for defendant, stated that the hernia was congenital and not the result of the strain. In affirming an award for the claimant, the learned Superior Court said (p. 465) : "In the first place we do not regard the case as one where the connection between the alleged cause and the injury resulting in disability is dependent on the testimony of medical or expert witnesses . . . It is a matter of common, everyday knowledge, shared by laymen as well as physicians, that hernia is frequently caused by some physical straining or over-exertion . . . 'The exciting cause of hernia is generally some over-exertion, as in lifting a heavy weight, jumping off a high wall, straining . . . Encyclopaedia Britannica, Vol. 13, p. 372, 11th Ed.' "

The testimony in the case is sufficient in law and fact to support the verdict and the judgment of the court below. There is no merit in the motions for judgment n.o.v. and for a new trial.

Judgment affirmed; costs to be paid by appellant.