**Danny M. ALEXANDER, Appellant**

v.

**CITY OF MEADVILLE and Patron's Mutual Fire Association of Northwestern Pennsylvania, Appellees.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 2012.

Filed Dec. 7, 2012.

R. Charles Thomas, Meadville, for appellant.

Craig R.F. Murphey and Bruce L. Decker, Jr., Erie, for City of Meadville, appellee.

Mark E. Mioduszewski, Erie, for Patron's appellee.

BEFORE: STEVENS, P.J., MUSMANNO, and ALLEN, JJ.

OPINION BY ALLEN, J.:

Danny M. Alexander ("Appellant") appeals from the trial court's granting of summary judgment in favor of Patron's Mutual Fire Association of Northwestern Pennsylvania ("Patron's Mutual"), and the City of Meadville ("City"). We affirm.

The trial court summarized the facts of this case as follows:

This action arises out of a slip-and-fall accident suffered by [Appellant], at the corner of Chestnut and Market streets in Meadville on February 10, 2008. As a result of this accident, [Appellant] sustained an injury to his right leg and sued [Patron's Mutual] and the [City].

On the night of February 9, 2008, [Appellant] and a friend drove from Meadville to Cambridge Springs to relax at a bar called the Iron Horse Inn. ([Appellant's] Deposition at pp. 30). While [Appellant] and his friend were in Cambridge Springs, it began to snow and accumulated approximately one inch by the time the two left the Iron Horse Inn. Snow continued to fall steadily as [Appellant] and his friend drove back to Meadville. Once in Meadville, [Appellant's] friend dropped [Appellant] off at his mother's residence on Chestnut Street around midnight. ([Appellant's] Deposition at pp. 31–34). At this time, [Appellant] walked to the Market Street Scene, a bar located on Market Street in downtown Meadville, where he drank some beer and smoked some cigarettes. [Appellant] left the Market Street Scene around 1:20am and began walking home. As he descended the sidewalk ramp located at the corner of Chestnut and Market streets, [Appellant] slipped and fell on a smooth patch of ice covered by approximately one to two inches of snow in the dip of the ramp. ([Appellant's] Deposition at pp. 44–46, 61–62).

A City ordinance requires property owners within the City to maintain their sidewalks in a reasonably safe condition, which includes keeping them clear of snow and ice accumulations. City of Meadville Ord. 2903 § 745.10 (1976). Pursuant to this ordinance, the City employed Nicholas J. Cherapovich as a Property Maintenance Inspector. Mr. Cherapovich's duties as the City's maintenance inspector included inspecting sidewalks within Meadville to ensure that the sidewalks were navigable and generally free of dangerous snowy and icy conditions in the winter. Mr. Cherapovich testified that Patron's Mutual consistently maintained its portion of the sidewalk and generally kept it free from snow and ice accumulations. (Mr. Cherapovich's Deposition at pp. 14–20). Further testimony of Maria Price, a Patron's Mutual employee[,] confirms that Patron's Mutual regularly inspected and shoveled and salted the portion of the sidewalk for which it was responsible during business hours, which included the ramp on which [Appellant] fell. (Ms. Price's Deposition at pp. 16–17; 26–30).

Of further relevance is the fact that the City retrofitted certain sidewalk ramps in Meadville pursuant to a resolution from a previous lawsuit. The sidewalks that were retrofitted were installed with ramps that tapered from the street corner to the street upon which dimpled mats were affixed to alert pedestrians of the change from sidewalk to street. The street corner where this accident occurred was retrofitted with such a ramp in compliance with the resolution. [Appellant] claims that the design and construction of this sidewalk ramp created a hazardous accumulation of snow and ice which led to his accident.

[Appellant] alleges that Patron's Mutual was negligent in failing to inspect and remedy the icy condition on the sidewalk ramp and in failing to remove the snow and ice accumulation on the ramp. Similarly, [Appellant] alleges that the City was negligent in permitting a defective ramp to be constructed that had a tendency to accumulate ice, in failing to prevent icy accumulations on the sidewalk, and in failing to warn pedestrians of the icy condition of the sidewalk. Both [Patron's Mutual and City] filed Motions for Summary Judgment. Trial Court Opinion, 3/22/12, at 1–3.

The trial court granted summary judgment to Patron's Mutual and the City on March 16, 2012, by an order which was subsequently amended on March 22, 2012,

to correct the name of Patron's Mutual's counsel. Appellant filed a timely notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the [c]ourt erred in granting summary judgment in favor of [Patron's Mutual].
2. Whether the [c]ourt erred in granting summary judgment in favor of the [City].

Appellant's Brief at 2.

In reviewing Appellant's challenge to the trial court's granting of summary judgment, we recognize:

Our scope of review ... [of summary judgment orders] ... is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain

insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Chris Falcone, Inc. v. Ins. Co. of the State*, 907 A.2d 631, 635 (Pa.Super.2006) (citation omitted). Here, reviewing the record in the light most favorable to Appellant, we affirm the trial court's determination that Patron's Mutual and the City were entitled to judgment as a matter of law.

To prevail against Patron's Mutual, Appellant must demonstrate that Patron's Mutual owed a duty of care to Appellant, the breach of which caused Appellant's injury resulting in damages. *See Grossman v. Barke*, 868 A.2d 561, 566 (Pa.Super.2005). Appellant contends that Patron's Mutual "had a duty to [Appellant] to clear sidewalks of ice and snow in a timely manner based upon the Ordinance of the [City] requiring such an action." Appellant's Brief at 11. Our review of the record and applicable case law belies Appellant's contention that he was owed a duty of care by Patron's Mutual.

■ The trial court explained:

Pennsylvania case law has established that a pedestrian walking on a public sidewalk is a licensee of the property owner. *Proctor v. Port Auth. Of Allegheny Cnty.*, 54 Pa. D. & C.4th 65, 72 (Pa.Com.Pl.2001). If a visitor to land is legally classified as a licensee,

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and

should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (e) the licensees do not know or have reason to know of the condition and the risk involved. Restatement (Second) of Torts § 342. Liability will only be imposed if all of the criteria in § 342 are met. *Miranda v. City of Philadelphia* [166 Pa.Cmwlth. 181], 646 A.2d 71, 74 (Pa. Commw[Cmwlth].Ct.1994). As such, § 342 initially requires that the possessor of the land have actual or constructive notice of the allegedly dangerous condition.

In this case, Patron's Mutual was responsible for snow and ice removal and general sidewalk maintenance pursuant to a City ordinance. Since [Appellant] was a licensee on the property of Patron's Mutual at the time of this accident, he is initially required to prove that Patron's Mutual had notice of the snowy and icy conditions. *See* Restatement (Second) § 342. Evidence throughout this litigation demonstrates that [Appellant] fails to establish that Patron's Mutual had notice of the icy conditions that caused [Appellant's] injuries. Therefore, Patron's Mutual cannot be held liable to [Appellant].

[Appellant] slipped and fell on a sidewalk ramp that Patron's Mutual was required to keep free from snow and ice pursuant to the City ordinance. Testimony of a Patron's Mutual employee and a City employee indicates that Patron's Mutual diligently complied with this statute during business hours, but performed no maintenance outside of business hours because no employees worked during those times. (Ms. Price's Deposition at pp. 16–17; 26–30; Mr. Cherapovich's Deposition at pp. 14–20). This accident occurred well outside of business hours on a weekend. ([Appellant's] Deposition at pp. 36). As such, at the time of [Appellant's] accident, Patron's Mutual would not have had notice of the accumulation of ice and snow, nor would it be proper for us to hold that it should have known of this condition at the time of the accident. Thus, we find that Patron's Mutual was not negligent in failing to remove the snow and ice that caused [Appellant's] injuries.

Furthermore, liability cannot be imposed on Patron's Mutual because [Appellant] fails to satisfy the requirements of the hills and ridges doctrine. According to the hills and ridges doctrine, a plaintiff must prove the following in order to recover for injuries sustained as a result of snowy and icy conditions that exist on a sidewalk: 1) the snow and ice on the sidewalk had accumulated in ridges or elevations of such size that they unreasonably obstructed travel; 2) the property owner had actual or constructive notice of the condition; and 3) it was the dangerous accumulation of snow and ice that caused the plaintiff to fall. *Rinaldi v. Levine* [406 Pa. 74], 176 A.2d 623, 625 (Pa.1962); *Gilligan v. Villanova University* [401 Pa.Super. 113], 584 A.2d 1005, 1007 (Pa[Super].1991). The hills and ridges doctrine only applies when snowy and icy conditions generally persist throughout an area, as opposed to patches of snow and ice. *Saris v. Charles,* 67 Pa. D. & C.4th 545, 550 (Pa.Com.Pl.2004).

In this case, [Appellant] testified that the patch of ice on which he slipped was smooth, not rippled or ridged. ([Appellant's] Deposition at pp. 61–62). Because liability under the hills and ridges doctrine only attaches when the snow

and ice have accumulated into unnaviga-
ble lumps and mounds, [Appellant] can-
not recover under this theory as he tes-
tified that the patch of ice on which he
slipped was smooth.

Trial Court Opinion, 3/22/12, at 5–6. We
agree with the trial court. *See Harmotta
v. Bender*, 411 Pa.Super. 371, 601 A.2d 837,
841 (1992) (affirming the trial court's entry
of judgment in landowner's favor, and jury
instructions regarding the hills and ridges
doctrine, requiring appellant to prove that
snow and ice had accumulated in hills and
ridges, that the appellees had notice of
such, and that the accumulation caused the
appellant to fall); *see also Sellers v. Cline*,
160 Pa.Super. 85, 49 A.2d 873, 874 (1946)
(denying relief for injury where "[t]here
were no hills or ridges that could be said
to be obstructions to safe travel, and [not-
ing that] the description of the sidewalk as
being 'like a washboard' d[id] not come
within the meaning of 'hills and ridges' as
defined by the appellate court . . .").

■ Appellant contends that Patron's
Mutual owed him a duty of care because
Patron's Mutual had "actual and/or con-
structive notice of the condition of the
sidewalk and descending ramp at the close
of business on Friday afternoon [February
8, 2008] and prior to [Appellant's] fall on
the early morning hours of [Sunday] Feb-
ruary 10, 2008." Appellant's Brief at 12.
We disagree.

Patron's Mutual operated from 8:30 a.m.
until 4:30 p.m. on weekdays, and was
closed during the weekends. N.T., Maria
Price's Deposition, 9/21/11, at 10–14; 26–
30. Appellant testified that snow began
falling at approximately 11:30 p.m. on Sat-
urday, February 9, 2008, as he was re-
turning to Meadville from Cambridge
Springs. N.T., Appellant's Deposition,
10/7/10, at 38–40. Appellant testified that
approximately one to two inches of snow
accumulated from the time he returned to

Meadville until immediately before his fall.
*Id.* at 40–46. Appellant fell at 1:20 a.m. on
Sunday, February 10, 2008. Thus, given
that Patron's Mutual was closed for busi-
ness during this snowfall, Patron's Mutual
had no actual notice of the ramp's condi-
tion at the time of Appellant's fall.

Arguing that Patron's Mutual had con-
structive notice, Appellant contends:

[t]he narrow passageway [where] Appel-
lant was descending . . . had become a
hazardous condition of a thick layer of
ice . . . and preventive measures should
have been taken by [Patron's Mutual] to
remove the snow banks and/or salt the
icy patch which caused [Appellant] to
fall [because] . . . the condition [where
Appellant] fell [had existed] for a sub-
stantial period of time prior to [Appel-
lant's] fall.

Appellant's Brief at 12. However, Appel-
lant's sworn testimony contradicts his con-
tention. Appellant testified that he "[had]
no idea" how long "[the] smooth ice under-
neath the freshly fallen snow" had been
present on the ramp where he fell. N.T.,
Appellant's Deposition, 10/7/10, at 63.
Likewise, Appellant "couldn't really say"
"how long those mounds of snow" had
been upon the sidewalk. *Id.* at 79.

■ Even assuming the snow mounds
had been present for a substantial period
of time prior to his fall, Appellant agreed
that "the mounds really had nothing to do
with [his] fall other than the fact that
[he][was] taking a path that would avoid
them." *Id.* at 60. Additionally, as the
trial court aptly noted, "[Appellant] testi-
fied that the snow and ice on which he
slipped was smooth. Moreover, the
mound of snow piled on the curb . . . **did
not obstruct his travel over the sidewalk
ramp. Thus no hills or ridges of snow
and ice caused [Appellant's] accident.**"
Trial Court Opinion, 5/16/12, at 2 (empha-
sis added); *see also Sellers, supra,* at 874.

■ We also note that the City ordinance at issue provides:

Snow and ice shall be removed from all sidewalks within the city … **on the same day that a fall of snow, freezing rain ceases or within the first five hours of daylight after the cessation of any such fall, whichever period is longer.**

City's Street and Sidewalk Code, Ordinance 2903, Section 745.10(c) (1976) (emphasis added). Therefore, Patron's Mutual was not in violation of the City's ordinance because Patron's Mutual's time to clear the fallen snow, or the ice which had developed underneath, had not expired when Appellant fell. *See Biernacki v. Presque Isle Condominiums Unit Owners Ass'n Inc.*, 828 A.2d 1114, 1117 (Pa.Super.2003) (affirming summary judgment in landlord's favor noting "[i]t was not reasonable for the snow and ice in the parking lot that had begun to fall sometime the night before, to be removed by 7:45 a.m. the following morning …"). Further, Mr. Cherapovich, the City's inspector, testified that "if a snowfall occurs on a late Saturday night or early Sunday morning … [he] [would be] looking to see [the business owners] come in Monday morning [to] get the sidewalks squared away …" N.T., Mr. Cherapovich's Deposition, 7/6/11, at 40.

The time afforded by the City's ordinance for a business owner to clear the snow and ice from sidewalks is consonant with the well-settled hills and ridges doctrine, which provides:

[A]n owner or occupier of land is not liable for generally slippery and icy conditions, for to require that one's walk be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement merely create a transient danger, **and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is a dangerous condition.**

*See Gilligan v. Villanova University*, 401 Pa.Super. 113, 584 A.2d 1005, 1007 (1991) (emphasis added).

Appellant contends that the hills and ridges doctrine is inapplicable because "there is no evidence" that when Appellant fell "generally slippery conditions" prevailed in the community. *See* Appellant's Brief at 5; 14. However, Appellant testified that he encountered snow while in Cambridge Springs, during his return trip to Meadville, and when he was walking to and from the Market Street Scene bar. N.T., Appellant's Deposition, 10/7/10, at 39–46. Moreover, he agreed that "at the time of the accident … for about three or four hours, we really had sort of generally wintery conditions in the community." *Id.* at 64.

Accordingly, as discussed above, Patron's Mutual had no actual or constructive notice of the ramp's condition at the time Appellant fell. Even assuming notice, Appellant's fall occurred prior to the expiration of Patron's Mutual's time to act under the City's ordinance. Therefore, Appellant's claim that Patron's Mutual violated the City's ordinance fails, as does Appellant's related argument that any violation of the ordinance was either negligence *per se* or evidence of negligence precluding summary relief. *See Sellers, supra*, at 874 ("The violation of a city or borough ordinance is not, per se, negligence. Such ordinances are evidentiary matters to be considered with all other testimony in the case as bearing upon the question of negligence … [ ] The introduction of the ordinance as evidence was properly allowed, but standing alone without proof of negligence as being the proximate cause of the

accident, the trial judge would not have been justified in submitting the case to the jury ...") (internal citations omitted). Therefore, Patron's Mutual was entitled to judgment as a matter of law.

In sum, we affirm the trial court's grant of summary judgment in Patron Mutual's favor because Patron's Mutual had no actual or constructive notice of the ramp's condition at the time of Appellant's fall. Moreover, even if Patron's Mutual had notice of the ramp's defective condition, Patron's Mutual's time to act under the City's ordinance had not expired at the time Appellant fell, thus precluding a finding that Patron's Mutual breached any duty of care it owed to Appellant. Additionally, Appellant fell on freshly fallen snow over a smooth patch of ice due to winter conditions which permeated the community—not on a hilly or ridged icy accumulation, thus barring Appellant's recovery pursuant to the hills and ridges doctrine.

Appellant next assigns error to the trial court's grant of summary judgment in favor of the City. To best understand the liability claims against the City, we review Patron's Mutual's allegations against the City, in conjunction with Appellant's contentions. Patron's Mutual contends:

[T]he exposure of the [City] to liability in this case is based upon the fact that it *created* the alleged dangerous condition. It did so in two respects. First, the City reconstructed the sidewalk and curb [where Appellant fell] ... by tapering the sidewalk to a level which was equal to the surface of the curb and street[,] and created the "dip" in the brick ramp which [Appellant] contends precipitated his fall. [ ] Secondly, the [City] created the alleged dangerous condition by plowing snow and ice from the surface of Chestnut and Market Streets onto the sidewalk, including the

tapered ramp leading from the sidewalk to the street surface.

Patron's Mutual's Brief at 16–17. Appellant contends the City caused the dangerous snow and ice accumulation where he fell, because the City negligently allowed "the snow [to] mount up at least two feet [on] the sidewalk adjoining the property of [Patron's Mutual], leaving only a narrow path" which channeled him down the retrofitted ramp on which he fell. Appellant's Brief at 16. Appellant further asserts that the City is not entitled to judgment as a matter of law because there was "a defect of the brick ramp leading from the sidewalk down to the street and that defect[,] i.e. in the brick ramp, [resulted] in water from melting snow flowing onto the brick ramp[,] and in cold weather freezing on the brick ramp resulting in a dangerous condition." Appellant's Brief at 17.

Here, the trial court determined:

In Pennsylvania, governmental entities are immune from tort claims under the Political Subdivision Tort Claims Act. According to this statute, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency, an employee thereof, or any other person. 42 Pa.C.S.A. § 8541. The act also identifies exceptions to immunity, and if an exception applies in a certain case, a governmental entity may be sued for a tort. 42 Pa.C.S.A. § 8542. One relevant exception under this act applies, in limited circumstances, where dangerous conditions persist on sidewalks. 42 Pa.C.S.A. § 8542(b)(7). According to the sidewalks exception:

[A plaintiff may sue for] [a] dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the

dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable. 42 Pa.C.S.A. § 8542(b)(7).

Thus, the sidewalks exception requires proof that, in addition to being negligent, the governmental entity had notice of the dangerous condition and had an opportunity to remedy that condition, but failed to do so. *Reid v. City of Philadelphia* [598 Pa. 389], 957 A.2d 232, 234 n. 1 (Pa.2008).

The imposition of liability upon a governmental entity under the sidewalks exception is only permitted where it is alleged that the injury "occurred as a result of a condition of the governmental realty itself deriving, originating, or having the realty as its source." *Cohen v. City of Philadelphia*, 847 A.2d 778, 782 (Pa.Commw[Cmwlth.]Ct.2004). Accordingly, there must be "[an] allegation and *proof* that the substance on the sidewalk or other real estate was caused to be on the real estate because of an improper design, construction, deterioration, or inherent defect in the real estate itself." *Finn v. City of Philadelphia* [165 Pa. Cmwlth. 255], 645 A.2d 320, 323 (Pa. Commw[Cmwlth].Ct.1994) (emphasis added). As such, the issue is whether there is a dangerous condition *of* the sidewalk as opposed to a dangerous condition *on* the sidewalk.

In *Baker v. City of Philadelphia* [145 Pa.Cmwlth. 421], 603 A.2d 686 (Pa. Commw[Cmwlth].1992) the plaintiff slipped and fell on ice and snow that accumulated on a sidewalk and street. The plaintiff's claim against the City of Philadelphia was that there was "a defect of the street and that the artificial condition, specifically the narrow opening of the defective sewer and the improper maintenance, did not merely facilitate the injury but rather caused the injury" and that this condition was foreseeable. *Baker, supra*, at 425 [603 A.2d 686]. As noted previously, Pennsylvania Rule of Civil Procedure 1035.2(2) requires a plaintiff defending against a motion for summary judgment "to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa. R.C.P. 1035.2(2). A plaintiff faced with a motion for summary judgment must produce evidence in support of the liability claims set forth in the Complaint, rather than merely demurring to the evidence developed during discovery and resting on allegations of liability alone, without proof. In the instant case, there is no evidence of foreseeability. Neither is there any evidence that the City had notice of a defect in the sidewalk or that the design of the sidewalk was defective. (Ms. Sampson's Deposition at pp. 20–21); (Ms. Berger–Smith's [Deposition] at pp. 37–38).

Trial Court Opinion, 3/22/12, at 7–9. Upon review of the record, we agree with the trial court's analysis.

Initially, we note that neither Patron's Mutual nor Appellant cite any cases to buttress their liability contentions against the City. *See* Patron's Mutual's Brief at

16–19; *see also* Appellant's Brief at 15–17. The failure to substantiate these arguments effects waiver. *See Korn v. Epstein*, 727 A.2d 1130, 1135 (Pa.Super.1999) (arguments not *appropriately* developed are waived) (emphasis in original) (internal citations omitted).

Waiver notwithstanding, our Supreme Court expressed:

[T]hat application of 42 Pa.C.S. § 8542(b)(7) depends on the "legal determination that an injury was caused by a condition of the realty itself deriving, originating from, or having the realty itself as its source . . ."

*Jones v. SEPTA*, 565 Pa. 211, 772 A.2d 435, 444 (2001).

▉ Here, Appellant testified there was a "little dip" on the ramp where he fell, which he later described as a "pretty sharp dip." N.T., Appellant's Deposition, 10/7/10, at 48; 53; 57. Appellant explained that "[w]henever I stepped on that dip there . . . I could have held onto the snow if it was bare underneath . . . [b]ut with the snow on top of solid ice and everything, that's when my left foot slipped." *Id.* at 59–60. Appellant did not present any evidence to contradict the testimony of Jeanne Marie Smith, the City's Public Works Support Coordinator. Ms. Smith testified that the design and construction of the retrofitted ramps met federal compliance standards for the ramps. N.T., Ms. Smith's Deposition, 7/6/11, at 30–31; 35–37. Likewise, Appellant did not proffer any evidence or any expert reports refuting Ms. Smith's testimony that the "slope of the retrofitted ramps . . . [had not] presented any problems relating to people falling or slipping or tripping," and denying that any complaints had been raised regarding "the slope that was built into [the ramps]." *Id.* at 37–38.

Rather, the record reflects that Appellant incorrectly sought to shift the burden of proving the defective condition of the ramp onto Patron's Mutual and the City by noting "none of the attorneys for [Patron's Mutual or the City] inquired as to the nature or depth of the dip that existed in the brick ramp at the time [Appellant] started down the brick ramp nor was there any counter-veiling [sic] evidence brought forth as to the source of the ice that had formed on the brick ramp which ultimately caused the Appellant's fall." Appellant's Brief at 17.

The trial court explained:

[Appellant] failed to submit any evidence suggesting it was foreseeable that the condition of the sidewalk would dangerously accumulate snow and ice that would result in the type of accident suffered by [Appellant]. Additionally, [Appellant] relied solely on the unsubstantiated assertions he made in his deposition regarding the condition of the sidewalk to establish that there was a defective condition of the sidewalk.

Trial Court Opinion, 5/16/12, at 2–3. Such evidence is inadequate for Appellant to survive a motion for summary judgment. *See Shepard v. Temple University*, 948 A.2d 852, 856 (Pa.Super.2008); *see also* Pa.R.C.P. 1035.2(2) (non-moving party to summary judgment motion has burden to produce evidence that would require issue to be submitted to jury).

Moreover, the record belies the contention that the City negligently caused the accumulation of snow and ice, such that the City was liable for Appellant's foreseeable injury. Appellant denied that there was "any type of snow that was on the street or on the sidewalk from any prior snow . . . during the week or so leading up to [the night of his fall]." N.T., Appellant's Deposition, 10/7/10, at 38. Appellant recalled that "it probably snowed the day before, maybe a couple of days before" the

night of his fall, but stated that the amount of snowfall was "just regular for Pennsylvania." *Id.* Appellant agreed that the "roads were clear" by the time he was headed to Cambridge Springs with his friend. *Id.* at 39. Appellant further explained that aside from "a few spots", there was "not really too much" snow. *Id.* at 38. Appellant testified that he could "not recall" "seeing any snow plows out" as he was returning from Cambridge Springs to Meadville. *Id.* at 41. Moreover, Ms. Michelle Sampson, a City representative, testified that on February 10, 2008, no snow plows had been dispatched until 1:30 a.m. and 1:42 a.m., which was subsequent to Appellant's fall. N.T., Michelle Sampson's testimony, 7/6/11, at 7.

Additionally, the record shows that the City lacked notice of the ramp's alleged defective condition. Mr. Cherapovich stated that there were no complaints "relative to the slipperiness of the brick ramps." N.T., Mr. Cherapovich's Deposition, at 33; Ms. Sampson testified that "the [City's] engineering department, planning department, and [the finance] department has never had any oral complaints relative to the problem at the intersection [where Appellant fell]", nor any written complaints. N.T., Ms. Sampson's Deposition, 7/6/11, at 21; 12–13; 19–20; *see also* N.T., Ms. Price's Deposition, 9/21/11, at 21.

Based on the foregoing, we affirm the trial court's grant of summary judgment in the City's favor because neither Appellant nor Patron's Mutual substantiated their liability arguments against the City. Appellant failed to show that his injury was foreseeable by the City after the City negligently caused the defective condition of the ramp, and had notice thereof. *See McDonough v. Borough of Munhall,* 331 Pa. 468, 200 A. 638 (1938) (reversing judgment in favor of plaintiff who slipped and fell on an icy sidewalk after determining

"that plaintiff has failed to establish negligence upon the part of the borough, or any notice to it of a condition that would sustain the charge that [the borough] failed in its duty of care, so as to entitle plaintiff to compensation for the unfortunate injury which she suffered"). Moreover, Appellant failed to establish that his injury was caused by "a condition of the government realty itself deriving, originating from, or having the realty as its source ..." *See Jones, supra,* at 444.

Order affirmed.