J-A17012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA A. KOZAK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WEST VINCENT TOWNSHIP | : | No. 292 EDA 2020 |

Appeal from the Judgment Entered December 13, 2019
In the Court of Common Pleas of Chester County Civil Division
at No(s):  No. 2017-10400-TT

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.:                    **FILED SEPTEMBER 15, 2020**

In this slip-and-fall matter, Patricia A. Kozak (Appellant) appeals from the judgment entered in the Chester County Court of Common Pleas in favor of West Vincent Township (Township), after the court granted Township's motion for summary judgment.[1]  Appellant argues the court erred in finding she was required to present an expert opinion that the cause of her physical

---

[1] Appellant took this appeal from the December 13, 2019, order granting Township's motion for summary judgment.  Appellant's Notice of Appeal, 1/13/20.  While this order was final for appeal purposes, we note the trial court also entered judgment in favor of Township that same day.  ***See*** Pa.R.A.P. 341(a)(1) ("A final order is any order that[, *inter alia*,] disposes of all claims and of all parties[.]").  Accordingly, we have amended the caption to reflect the appeal is taken from the judgment.

"symptoms" and "cognitive difficulties" was her alleged fall.  Appellant's Brief at 15-16, 19.  We affirm.

Township is a municipality in Chester County and has its municipal building in Chester Springs.[2]  On November 3, 2017, Appellant filed a praecipe for writ of summons against Township.  On February 13, 2018, Township filed a praecipe for rule to file a complaint.  On April 19, 2018, Appellant filed a complaint against Township, averring the following:  on November 4, 2015, Appellant was walking outside the Township's municipal building as an invitee.[3]  She "caught her toe on [a] defect in the walkway and fell violently, flying through the air and **landing on her knees and her hands** causing

---

[2] **See** Appellant's Complaint, 4/19/18, at 1.

At this juncture, we note the certified electronic record does not include a trial docket.  Appellant's reproduced record, however, includes a "Case Summary Report," which lists the filings in this matter, along with dates.  We further note Appellant identifies this "Case Summary Report" in her table of contents as "Docket Entries."  While we have referred to this "Case Summary Report" in our review, we identify filing dates by the time stamps appearing on the face of the record documents.

[3] The complaint further averred the following:  Appellant was present at the municipal building one day earlier, November 3, 2015, which was Election Day.  Appellant's Complaint at 1.  Appellant was "promot[ing] certain candidates" but "was harassed and threatened," and she "reported the threat to the West Vincent Township Police inside the township building[.]"  **Id.** Appellant then returned to the municipal building on November 4th "in order to file a Freedom of Information Act request regarding the incident she had reported to the police the previous day[.]"  **Id.** at 2.

violently jolting [sic] her entire body and causing serious injuries." Appellant's Complaint at 2 (emphasis added).

On April 26, 2018, Township filed preliminary objections, arguing Appellant's complaint "completely failed to specify the nature of her alleged injuries." Township's Preliminary Objections, 4/26/18, at 2. The trial court sustained the preliminary objections on July 24, 2018, but granted Appellant leave to file an amended complaint.

It appears Appellant then filed an amended complaint on August 9, 2018.[4] This complaint again avers that when she fell on Township's walkway, she "land[ed] on her knees and her hands," but adds Appellant "received serious injuries as a result of the fall," including: "a traumatic brain injury;" "an episode of temporary paralysis[, for which she] was taken to the hospital by ambulance about ten days after her fall;"[5] and worsened symptoms of her

---

[4] The certified electronic record does not include an amended complaint, and Appellant's "Case Summary Report" likewise does not include any entry for an amended complaint. However, Township filed an "Answer" to Appellant's amended complaint on August 29, 2018, and in subsequent filings Township attached a copy of the amended complaint, which bears a court stamp indicating a filing date of August 9, 2018. In our review, we refer to this copy of the amended complaint. *See* Township's Motion for Summary Judgment, 11/13/19, Exhibit A (Appellant's Amended Complaint, 8/9/19).

[5] Township subsequently pointed out that hospital records showed Appellant "was actually admitted for this episode of temporary paralysis on November 22, 2015, [18] days after her alleged" fall. Township's Motion for Summary Judgment at 3 n.2.

pre-existing fibromyalgia.[6]  Appellant's Amended Complaint, 8/9/18, at 2-3 (unpaginated).  Township filed an answer on August 29, 2018.

At this juncture, we note Appellant underwent a neuropsychological evaluation on July 12, 2019.  The resulting report reiterated her claims that "[s]he fell onto her knees and hands" but did not hit her head, and that after the fall, she suffered memory and speech problems and paralysis. Confidential Neuropsychological Evaluation at 1-2.  However, the report also summarized Appellant's own statements that: (1) although she twice visited the hospital due to suspected strokes, CT scans and MRIs showed no stroke; and (2) she was diagnosed with a transient ischemic attack (TIA).[7]  *Id.*

Following discovery, Township filed the underlying motion for summary judgment on November 13, 2019.  It argued, *inter alia*, Appellant failed to present expert testimony to establish: (1) she was even diagnosed with a traumatic brain injury; or (2) that "such conditions were caused by the alleged accident."  Township's Motion for Summary Judgment at 9.  In support, Township cited Appellant's own neuropsychological report as "directly contradict[ing]" her claim of a brain injury:

---

[6] In both her Pa.R.A.P. 1925(b) statement and appellate brief, Appellant states her abandonment of any appellate claim regarding fibromyalgia symptoms. Appellant's Brief at 14; Appellant's Statement of Matters Complained of on Appeal, 1/29/20, at 1 n.1.

[7] Township explained that a TIA is also known as a "mini-stroke."  Township's Motion for Summary Judgment at 3.

> [Appellant's] neuropsychological profile is largely intact. During the clinical interview, [Appellant] reported her symptoms began immediately after she fell on the sidewalk. However, **she did not hit her head or lose consciousness during the fall; it is unclear how she would have sustained a concussion from this incident and it is unlikely her reported cognitive symptoms resulted from a concussion**. Slurred speech and memory problems are common complaints following a TIA. . . .

*Id.* at 10, *quoting* Confidential Neuropsychological Evaluation at 8 (some emphasis omitted).

Appellant filed a response to Township's summary judgment motion, in which she averred there was sufficient "**lay** testimony to prove [her] injuries and cognitive deficiencies [were] caused by the fall." Appellant's Response to Motion for Summary Judgment, 12/12/19, at 4 (emphasis added).

On December 13, 2019, the trial court entered the underlying order granting Township's motion for summary judgment, and entered judgment in favor of Township. The court agreed with Appellant "that medical testimony is not necessary where the symptoms or injury 'immediately and directly or naturally and probably' result from the negligent act." Trial Ct. Op., 2/6/20, at 1, *citing Tabutea v. London G & A Co., Ltd.*, 40 A.2d 396, 398 (Pa. 1945). However, the court rejected Appellant's arguments that in the present case, "no medical expert testimony was required" and, instead, "that she herself could testify at trial regarding a diagnosis, concussion or traumatic brain injury, and opine on causation from a trip and fall." Trial Ct. Op. at 1.

Appellant filed a timely notice of appeal on Monday, January 13, 2019,[8]

and a timely court-ordered Pa.R.A.P. 1925(b) statement. On appeal, she

presents one issue for our review:

> Whether expert medical testimony is necessary to prove that [Appellant's] physical symptoms and the damages resulting from those symptoms were caused by [Township's] negligence where the symptoms, which did not exist prior to her trip and fall, appeared immediately after the fall and persist to the present day?

Appellant's Brief at 6.

Appellant avers that in granting summary judgment to Township, the

trial court erred in considering only a "diagnos[i]s of 'traumatic brain injury,'"

and should have also considered her other symptoms.[9] Appellant's Brief at

12. She contends she "did not argue below and is not arguing here that she

should be permitted to testify as a medical expert[10] and tell the jury that she

suffered a brain injury. The diagnosis of brain injury is not necessary to prove

---

[8] The thirty-day period for Appellant to file a notice of appeal fell on Sunday, January 12, 2019. *See* Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken). Appellant's filing of the notice of appeal on the following day, Monday, January 13th, was thus timely. *See* 1 Pa.C.S. § 1908 (when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation).

[9] As stated above, Appellant has abandoned any appellate issue relating to her fibromyalgia claim. Appellant's Brief at 14.

[10] The trial court made no ruling upon a claim that Appellant should be qualified to testify as an expert medical witness. Instead, the court concluded she was required to **present** an expert witness to testify about her alleged injuries. Order, 12/13/19, at 2-3 n.1.

her damages." *Id.* at 15.  Appellant points out that although a plaintiff must generally prove causation of an injury by expert medical testimony, such expert testimony is not required where: (1) "the injury was so 'immediately and directly, or naturally and probably,' the result of the accident;" and (2) "where there is an **obvious** causal relationship between the two." *Id.* at 17-18, *citing*, *inter alia*, **Tabuteau**, 40 A.2d 396; **Lattanze v. Silverstrini**, 448 A.2d 605, 608 (Pa. Super. 1982).   Appellant then avers she should be permitted to testify at trial about the following symptoms, which arose immediately after the alleged fall and persist to this day: (1) after driving to her work on the day after the alleged fall, being unable to "get out of [her] car," being "in a fog," not "thinking right," and thus going home; (2) at band practice, not remembering her "own songs that [she] had written;" (3) being unable to "do paperwork for a long time" and "having a hard time . . . processing what [she] was reading;" (4) having slow speech and having to be "careful about" not slurring words; and (5) feeling "overwhelmed when there's several people [or] group conversations . . . because [her] thought process does not keep up with . . . conversation." *Id.* at 8-10, 15.

Reading Appellant's various argument together, we glean a claim that the trial court: (1) erred in solely considering her burden of proof to establish a traumatic brain injury; and (2) erred in precluding Appellant from testifying, at trial, about other "symptoms" and "cognitive difficulties" that occurred

immediately after her alleged fall and persist today. *See* Appellant's Brief at 15-16, 19. We conclude no relief is due.

We first note our standard of review of a summary judgment order:

> Our scope of review . . . is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

*Alexander v. City of Meadville*, 61 A.3d 218, 221 (Pa. Super. 2012) (citation omitted).

Pennsylvania Rule of Civil Procedure 1035.2 provides a party may move for summary judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]" Pa.R.C.P. 1035.2(1).

> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own

conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Alexander***, 61 A.3d at 221 (citation omitted).

Generally, "[n]egligence is established by proving the following four elements: '(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.'" ***Grossman v. Barke***, 868 A.2d 561, 566 (Pa. Super. 2005) (citation omitted).

> In a personal injury case, the plaintiff must prove the existence of a causal relationship between the injury complained of and the alleged negligent act to be entitled to recover for the injury. Generally, a plaintiff must prove causation by expert medical testimony. There is an exception, however, where there is an obvious causal relationship between the two. An obvious causal relationship exists where the injuries are either an "immediate and direct" or the "natural and probable" result of the alleged negligent act. ***Tabuteau*** . . . 40 A.2d 396[.] "The two must be 'so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection' . . . ."

***Lattanze***, 448 A.2d at 608 (some citations omitted).

In ***Tabuteau***, the plaintiff slipped, fell on a sidewalk, and immediately felt pain in his groin. ***Tabuteau***, 40 A.2d at 397. Two days after the fall, he treated with "his doctor and was informed of his condition," a hernia. ***Id.*** "Before the accident[, the] plaintiff was in good health, and had never had pain in the inguinal region. During the period of incapacity[,] he had no other disabling illness, except the hernia condition." ***Id.*** Ultimately, the plaintiff underwent surgery. ***Id.*** The plaintiff brought "an action in assumpsit upon an accident insurance policy issued to [him] by [the] defendant" insurance

company, claiming that he sustained his injury in an "accident," within the meaning of the policy. *Id.* The "[d]efendant denied the condition resulted from an accident and contends it was the result of faulty development of the body of [the] plaintiff." *Id.* A verdict was rendered for the plaintiff. *Id.*

On appeal, the defendant argued the plaintiff failed to "make out a case[, where] his doctor did not testify that in his professional opinion the accident . . . brought about the hernia." *Tabuteau*, 40 A.2d at 397. Our Supreme Court disagreed, reasoning:

> [E]xpert testimony is not necessary where death (or injury) is so immediately and directly, or naturally and probably, the result of the accident that the connection between them does not depend solely on the testimony of professional or expert witnesses[.]
>
> Plaintiff produced direct and competent evidence which, if believed, clearly established the casual relationship between the accident and the injuries. Plaintiff's own testimony is sufficient to support the finding of the jury that he suffered an accidental injury within the terms of the policy, resulting in disability.

*Id.* at 398 (citations omitted).

In *Lattanze*, the plaintiff was in a vehicle accident, in which he "struck the left side of his forehead against the windshield and his left side and arm against the door." *Lattanze*, 448 A.2d at 606. Later that day, and in the days following, he suffered severe headaches and pain in his neck, shoulders, and left arm. *Id.* at 606-07. "Three weeks after the accident, he started having vision difficulties." *Id.* at 607. During this time, the plaintiff treated with his doctor, and was diagnosed with "a concussion, cervical strain, lumbodorsal and lumbosacral sprains, and some tendonitis, mild fasciitis [sic]

- 10 -

in the neck and shoulder. [He] was hospitalized for eleven days." *Id.* The plaintiff brought suit against the driver of the other vehicle in the collision, and at trial, the plaintiff's doctor testified the plaintiff's "physical problems 'were consistent with . . . a recoil type injury [ — ] bumping or jostling . . . rather abruptly." *Id.* However, neither the doctor, nor any other expert witness, "testified that in [their] professional opinion the [plaintiff's] physical problems were caused by the accident." *Id.* The trial court directed a verdict in favor of the defendant, concluding "expert medical testimony was needed to prove the causal relationship between [the plaintiff's] injuries and the accident." *Id.*

On appeal, this Court reversed, after considering *Tabuteau* and other decisions where "it was determined that the injuries complained of were either an 'immediate and direct' or the 'natural and probable' result of the alleged negligent act and, therefore, expert medical testimony was not needed to prove causation[.]"[11] *Lattanze*, 448 A.2d at 608. We observed:

_____

[11] The *Lattanze* Court cited these decisions:

> *Schultz v. Pivar*, [88 A.2d 74 (Pa. 1952)] [sacro-iliac sprain resulting from a fall into a manhole, back pain started immediately after the fall]; *Tabuteau* . . . , *supra*, [hernia caused by tripping on an uneven sidewalk, intense pain in groin and nausea felt immediately after the accident, two small lumps in the groin area discovered shortly thereafter]; *Simmons v. Mullen*, [331 A.2d 892 (Pa. Super. 1974) [minimal organic brain damage caused by being struck on the head by a car and knocked unconscious]; *Fenstermaker v. Bodamer*, [171 A.2d 641 (Pa. Super. 1961)]

These cases contain two common characteristics. The first is that the respective plaintiffs began exhibiting symptoms of their injuries immediately after the accident or within a relatively short time thereafter. The second is that the injury complained of was the type **one would reasonably expect to result from the accident** in question.

*Id.* (emphasis added). The Court also considered cases in which

an obvious causal relationship did **not** exist between the injuries . . . and the alleged negligence and, therefore, expert medical testimony **was** needed to establish the necessary causal link[.[12]] In these cases it is to be noted that a significant period

_____

[neck, shoulder and elbow pain developed shortly after an auto accident, doctor prescribed a neck brace and leather collar to ease the pain]; *Munns v. Easthome Furniture Industries, Inc.*, [164 A.2d 30 (Pa. Super. 1960)] [ruptured cervical disk caused when a sudden gush of compressed air twisted the plaintiff's left arm while he was using a power stapler, pain and numbness in the fingers felt shortly after the accident, pain spread to shoulder and then neck in the following days]; and *Yellow Cab Co. v. Workmen's Compensation Appeal Board*, [390 A.2d 880 (Pa. Cmwlth. 1978)] [subdural hematoma caused when plaintiff struck his head against the windshield in an auto accident, severe headaches and dizziness started almost immediately after the accident, plaintiff blacked-out one month after the accident].

*Lattanze*, 448 A.2d at 608 (footnote omitted).

[12] The *Lattanze* Court considered these decisions:

*Smith v. German*, [253 A.2d 107 (Pa. 1969)] [allegation that a severe personality change was caused by a period of marital discord, rather than an auto accident]; *Florig v. Sears Roebuck & Co.*, [130 A.2d 445 (Pa. 1957)] [allegation that fall from a roof was caused by a wrist sprain sustained fifteen months prior to the fall, where the fall occurred when the plaintiff's left arm gave out while working on a roof]; *Menarde v. Philadelphia Transportation Co.*, [103 A.2d 681 (Pa. 1954)] [allegation that a slip and fall on a sidewalk two and one half months earlier had caused cancer where the only injury sustained in the fall was a

of time had elapsed between the injury complained of and the accident and that the injury **was not of the type one would normally expect to result from the accident in question** either **because the accident would not normally produce such an injury** or there were other equally likely or more likely causes of the injury.

*Lattanze*, 448 A.2d at 608-09 (emphasis added).

As we state above, Appellant appears to argue the court should have separately considered, under different legal standards, her: (1) alleged traumatic brain injury; and (2) additional "symptoms" and "cognitive difficulties." **See** Appellant's Brief at 15-16, 19. Appellant offers no explanation, however, why these additional symptoms — difficulty in reading, speaking, and concentrating, persisting more than four and a half years after the alleged fall — do not stem from and are not related to a traumatic brain injury. This absence of explanation undermines her claim that the two should be treated differently.

_____

bruise in the area where the cancer was found]; *Albert v. Alter*, [381 A.2d 459 (Pa. Super. 1977)] [allegation that an abnormal curvature of the spine and a defective vertebrae were the result of an auto accident where the symptoms did not develop until sometime after the accident and the problems are typically a developmental defect]; *Simons v. Workmen's Compensation Appeal Board*, [415 A.2d 1290 (Pa. Cmwlth. 1980)] [allegation that a detached retina was caused by tripping over a stool]; and, *Heffer v. G.A.F. Corporation*, [370 A.2d 1254 (Pa. Cmwlth. 1977)] [allegation that a heart attack was caused by exposure to extreme cold shortly before the attack].

*Lattanze*, 448 A.2d at 608-09.

- 13 -

In any event, we conclude that no relief is due, where Appellant has failed to show her symptoms and "cognitive difficulties" were "the type one would reasonably expect to result from the accident in question." *See Lattanze*, 448 A.2d at 608. By Appellant's own admission, in both her neuropsychological evaluation and amended complaint, when she fell, she "land[ed] on her knees and her hands causing violent jolting [sic] her entire body." Appellant's Amended Complaint at 2-3; Confidential Neuropsychological Evaluation at 1. We disagree with her contention that speech and cognitive difficulties are "either an 'immediate and direct' or the 'natural and probable' result of" falling onto one's hands and knees. *See Lattanze*, 448 A.2d at 608. Instead, no "obvious causal relationship" exists between Appellant's alleged fall and symptoms. *See id.* Indeed, Appellant's own neuropsychological report considered Appellant's claim that "her symptoms began immediately after she fell," but opined that, where "she did not hit her head or lose consciousness[,] it is unclear how she would have sustained a concussion from this incident and it is unlikely her reported cognitive symptoms resulted from a concussion." Confidential Neuropsychological Evaluation at 8. Accordingly, we reject Appellant's claim that lay testimony alone was sufficient to establish that her symptoms were caused by the fall. *See id.*

We conclude the trial court properly found the record lacked sufficient evidence, from Appellant, "to make out a *prima facie* cause of action." *See*

***Alexander***, 61 A.3d at 221.  Thus, we affirm the order granting summary judgment in favor of Township.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2020