396 A.2d 658

**Sandra J. McARDLE, and John J. McArdle, her husband**

v.

**Louis PANZEK, Appellant.**

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided Dec. 28, 1978.

R. Charles Thomas, Meadville, for appellant.
Paul D. Shafer, Jr., Meadville, for appellees.

PER CURIAM:

Appellant contends that the lower court erred in allowing the jury to assess damages for appellee's personal injuries without any expert medical evidence that these injuries were caused by appellant's admitted negligence. We agree, and therefore, reverse and remand the case for a new trial limited to damages.

On November 6, 1974, appellee was stopped in traffic waiting to make a left-hand turn when appellant drove his vehicle into the rear end of appellee's vehicle. Appellant admitted liability, and the case went on trial on February 22, 1977, on the issue of damages only. Among the items of damages appellee sought to recover were medical bills and pain and suffering for sclerosis of her sacroiliac joints.

Dr. William R. McWhirter, M.D., who testified for appellee, was the sole medical expert called. He testified as follows: He first examined appellee two days after the accident. Appellee complained of pain, numbness, and weakness in her left arm, left lower back, and left buttock. There were no objective signs of injury except for loss of motion; x-rays taken of appellee were negative. A second examination on November 27, 1974, revealed the same subjective symptoms, plus muscle spasms along the spine. Dr. McWhirter's diagnosis was that appellee had an acute cervical strain and lower back strain caused by the automobile accident. However, these problems cleared up in a short while.

An examination of appellee by Dr. McWhirter on January 22, 1975, revealed that appellee was no longer suffering from the strain which had been earlier diagnosed, but appellee still complained of pain in her left lower back and left buttock. A further examination showed that the pain was being caused by sclerosis of the left sacroiliac joint, which is an inflammation and hardening of the bone. X-rays now confirmed sclerosis of both sacroiliac joints, especially the left. This was the first time that this injury appeared on any x-rays taken of appellee. Dr. McWhirter examined appellee six times over the next seven months, with each examination revealing that appellee's continued pain was caused by the sclerosis. Prescribed medication was able to control the pain to a degree. Dr. McWhirter's final diagnosis on October 6, 1975, was that appellee's sclerosis, while not permanent, would remain for an indefinite period of time causing intermittent pain.

Prior to the accident, appellee was a healthy woman with no history of lower back pain or injuries. Sacroiliac sclerosis is not a natural body process. However, Dr. McWhirter could not offer an opinion on what caused appellee's condition. On direct examination, he testified:

"Q. Doctor, is there any way you can tell what caused that inflammation of the sacroiliac joint?

"A. No."

This was repeated on cross-examination:

"Q. As I understand, . . . you cannot relate this process [the sclerosis] that you observed to the accident of November 6th, 1974?

"A. That is correct."

Finally, on redirect examination:

"Q. And I believe you stated that her low back pain, I believe, is caused at this time by the inflammation of the sacroiliac joint, is that correct?

"A. That's correct.

"Q. And you do not know the cause of that?

"A. That's correct.

"Q. You're not saying that it wasn't caused by the accident, you're just saying you can't say what it was caused by?

\* \* \* \* \* \*

"A. That's right."

These three exchanges make up all of the expert medical testimony in evidence on the issue of whether the automobile accident with appellant caused appellee's sclerosis of the sacroiliac joints.

On the issue of causation of appellee's sacroiliac injuries, the trial court charged, in pertinent part:

"That indecision on the doctor's part does not throw the McCardle's [sic] out of court, but it certainly makes you focus attention again on this burden of proof idea. . .
Is it a natural progression of the injuries the doctor testified to? He says he can't positively say that: can't give his opinion that it is. But, there is no requirement that a person fails to carry their burden of proof because an expert cannot give an opinion one way or the other."

At the close of the charge, appellant's counsel entered three specific objections to allowing the jury to consider damages related to the sacroiliac injury for lack of proof of causation. The jury returned a verdict of $7,500, which by stipulation of counsel was entered as judgment for $7,695.93 to reflect appellee's personal property damage. In his post-verdict motions for a new trial, appellant's counsel again excepted to the submission to the jury of all damages relating to the sacroiliac injury, specifically citing a failure of proof of causation. On August 26, 1977, the lower court denied appellant's motion for a new trial. This appeal followed.

The law as to when the plaintiff in a personal injury action must prove causation by expert medical testimony is well-stated in *Smith v. German,* 434 Pa. 47, 50–51, 253 A.2d 107, 109 (1969):

" 'Where there is no obvious causal relationship, unequivocal *medical* testimony is necessary to establish the causal connection.' . . . But where 'the disability com-

plained of is the natural and probable result of the injuries, the fact-finding body may be permitted to so find, even in the absence of expert opinion.' . . . The two must be 'so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection.' . . ." (citations omitted).

A number of cases have allowed plaintiffs to recover damages for personal injuries in the absence of medical opinion that their injuries were caused by defendant's negligence. *See Schultz v. Pivar,* 370 Pa. 271, 88 A.2d 74 (1952) (severe and permanent sacroiliac strain suffered immediately after slipping through manhole cover); *Tabuteau v. London G. & H. Co., Ltd.,* 351 Pa. 183, 40 A.2d 396 (1945) (pain in groin and hernia suffered immediately after misstep on uneven sidewalk); *Simmons v. Mullen,* 231 Pa.Super. 199, 331 A.2d 892 (1974) (child suffered brain damage after being struck on head by auto); *Fenstermaker v. Bodamer,* 195 Pa.Super. 436, 171 A.2d 641 (1961) (neck strain suffered immediately after auto accident); *Mohr v. Desimone & Sayers,* 110 Pa.Super. 44, 167 A. 504 (1933) (back injury preventing further work immediately after slip and fall into ditch). From reading the cases, it appears that the most salient unifying factor of the cases is that the injury complained of appeared *immediately* after the occurrence of the accident. The factor of immediacy is specifically stressed by several cases. *See Tabuteau, supra,* 351 Pa. at 186, 40 A.2d at 398; *Fenstermaker, supra,* 195 Pa.Super. at 439, 171 A.2d at 642.[1]

---

1. There are three cases in which proof of causation was allowed in the absence of medical opinion to a reasonable certainty, even though the injury was not discovered immediately after the accident. *Paul v. Atlantic Refining Co.,* 304 Pa. 360, 156 A. 94 (1931) (ulcer on larynx developed six weeks after inhaling hydrocarbon fumes); *Yellow Cab Co. v. Workman's Compensation Appeal Board,* 37 Pa. Cmwlth. 337, 390 A.2d 880 (1978) (subdural hematoma not discovered until one month after rear-end auto collision); *Workman's Compensation Appeal Board v. Bethlehem Mines,* 22 Pa.Cmwlth. 437, 349 A.2d 529 (1975) (herniated disc not discovered until three months after being struck by half-ton steel plate). In each of these three cases, the injured parties did show immediate symptoms of the injury later discovered. Moreover, in each of these cases the medical

There is another line of cases denying plaintiff's recovery for personal injuries for lack of expert medical opinion on the issue of causation. *See Smith v. German, supra* (severe personality change suffered after period of marital difficulties); *Florig v. Sears, Roebuck & Co.,* 388 Pa. 419, 130 A.2d 445 (1957) (injuries from fall off roof allegedly caused by injuries suffered from slip and fall fifteen months earlier); *Menarde v. Philadelphia Transp. Co.,* 376 Pa. 497, 103 A.2d 681 (1954) (cancer developed two and a half months after slip and fall); *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358 (1926) (pneumonia suffered two months after cut on arm); *Albert v. Alter,* 252 Pa.Super. 203, 381 A.2d 459 (1977) (lower back injury not suffered until some time subsequent to automobile collision with hay wagon in which plaintiff was riding); *Heffer v. GAF Corp.,* 29 Pa.Cmwlth. 365, 370 A.2d 1254 (1977) (heart attack suffered shortly after exposure to extreme cold); *Pagan v. DeWitt,* 27 Pa.Cmwlth. 495, 365 A.2d 463 (1976) (schizophrenia developed after accident in which head struck cement floor); *Washko v. Ruckno,* 180 Pa.Super. 606, 121 A.2d 456 (1956) (heart attack suffered after period of heavy work); *Rich v. Abbatoir,* 160 Pa.Super. 200, 50 A.2d 534 (1947) (death from coronary occlusion suffered after a slip and fall).

It is somewhat easier to generalize from this line of cases that certain kinds. of injuries—namely heart attacks and mental disorders—will usually require expert medical evidence of causation. Otherwise, it is again apparent that where there is a significant time lag between the accident and the injury suffered, the courts will require expert medical evidence of causation. *See Florig, supra,* 388 Pa. at 423, 130 A.2d at 446; *Menarde, supra,* 376 Pa. at 500, 103 A.2d at 683; *Anderson, supra,* 285 Pa. at 446, 132 A. at 359. We think that the facts of *Menarde* are especially instructive. In that case a healthy woman fell from a street car. An examination that same day revealed a bruised and discolored

experts who did testify stated that the injury was "consistent with" or "most likely caused by" the accident. *See Paul, supra,* 304 Pa. at 363, 156 A. at 94; *Yellow Cab, supra,* 37 Pa.Cmwlth. at 340; 390 A.2d at 881; *Bethlehem Mines, supra,* 22 Pa.Cmwlth. at 437, 349 A. 2d at 530.

right breast, but no lumps or nodules. The bruise soon disappeared, but two and a half months after the accident, the breast became cancerous and required a radical mastectomy. Under these circumstances, said the Court, ". . . in order to link her impaired physical condition to the defendant's conduct, the plaintiff was forced to depend on expert medical testimony . . . ." *Menarde, supra* 376 Pa. at 501, 103 A.2d at 684.[2] In *Albert,* the plaintiff suffered contusions on her legs and a fracture of the first metatarsal of her left foot from the accident, but it was not until some time later that plaintiff complained of low back pain. The diagnosis of this pain was double scoliosis (abnormal curvature of the spine) and spondylolisthesis (a vertebrae defect). The scoliosis was cured by a low back belt, but the spondylolisthesis required corrective surgery, which was successful but still left some pain and limited motion. The expert medical testimony on the issue of causation was that science did not know the cause of these afflictions. Scoliosis appeared to be common among adolescent girls. Spondylolisthesis is usually discovered after some precipitating episode, but appears to be an inherited trait more than anything else. Therefore the witness could not say that the hayride accident was the cause of the back injuries.

Applying these principles to the case at bar, we hold that the circumstances here required appellee to prove by expert medical testimony that her sacroiliac injury was caused in fact by the automobile accident. The facts of this case are very close to *Menarde.* Here, as in *Menarde:* (1) the injury did not manifest itself until two and a half months after the accident, (2) an examination which occurred shortly after the accident revealed a different, temporary, and more minor injury to the same part of the body where a more serious injury later developed, (3) the first examination also failed to show any symptoms of the injury which later developed, and (4) the injury was to a healthy woman with no prior history of the injury suffered. This case is also like *Albert, supra,* in that the injury and its

---

2. In *Menarde,* unlike the instant case, plaintiff was able to produce expert testimony on the issue of causation.

symptoms were not contemporaneous with the accident, and the available medical witness could not testify with certainty as to the cause of the injury at all.[3] If an expert medical witness cannot say what the cause of this injury was, then a lay jury can do no more than speculate.

In sum, there was a failure of proof in appellee's case, and it was error to submit to the jury appellee's damage claims which related to the sclerosis of her sacroiliac joints. Because of our disposition of this issue, we do not reach other grounds for reversal urged by appellant.

Reversed and remanded. As liability is admitted, the new trial will again be limited to the issue of damages.

HOFFMAN, J., did not participate in the consideration or decision of this case.

3. Sclerosis is a chronic condition, with the hardening and inflammation of the bones developing over time. Thus, even if the sclerosis is in response to a specific trauma, the injury would not be manifest immediately after the trauma. Here, X-rays taken of the appellee the day of the accident were negative, revealing no sclerosis at that time. Moreover, the expert medical testimony here did not even offer that appellee's sclerosis was probably or even possibly caused by the auto accident. Thus, the facts of this case are distinguishable from *Paul, Yellow Cab Co.,* and *Bethlehem Mines,* note 2 *supra,* and we need not consider whether those cases remain good law in light of *Hamil v. Bashline,* 481 Pa. 256, 264–265, 392 A.2d 1280, 1285 (1978).