J-A07007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONALD KNUDSEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELLIOT BROWNSTEIN, M.D., | : | No. 2260 EDA 2018 |
| GLENSIDE INTERNAL MEDICINE, | : | |
| PRESBYTERIAN HOSPITAL MEDICAL | : | |
| CENTER, ANEESH KHUSHMAN, M.D., | : | |
| AND THE TRUSTEES OF THE | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |

Appeal from the Judgment Entered July 25, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2013-23058

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:          **FILED SEPTEMBER 09, 2019**

Appellant, Donald Knudsen, appeals from the judgment entered on July 25, 2018, in favor of Appellant and against Aneesh Khushman, M.D. ("Khushman"), in the amount of zero dollars.[1]  We affirm in part, reverse in part, and remand for proceedings consistent with this memorandum.

**Factual and Procedural History**

The trial court summarized the relevant factual background of this case as follows.

_____

[1] Appellant originally appealed from an October 13, 2017, order, which granted in part and denied in part his post-trial motion.  This Court quashed the appeal as premature on July 23, 2018.  ***See Knudsen v. Brownstein**, **M.D.*, et al., 3453 EDA 2017 (Pa. Super. 2018).

_____

*   Former Justice specially assigned to the Superior Court.

[Appellant] met Khushman in April 2010 while they were working together for the Census Bureau. Khushman represented that he was a medical doctor and a resident at Presbyterian Hospital Medical Center.

On September 13, 2010, [Appellant] injured his leg [while] moving furniture from his apartment. [Appellant] testified that initially "[t]here was a laceration and some swelling up, a little blood. Some blood." [Appellant] contacted Khushman the same day seeking medical advice and perhaps direction towards some kind of treatment. Khushman came over to [Appellant's] residence and evaluated [Appellant's] injury, advised him against going to the emergency room, and told [Appellant] he would return the next day to have another look at it.

Khushman evaluated [Appellant's] injury the following day and suggested a diagnosis of neuropathy. Khushman performed a diagnostic test and determined that [Appellant] suffered a loss of sensation in his foot, especially up front, towards the toes.

On September 15, 2010, Khushman again visited [Appellant]. [Appellant's] foot was getting worse. [Appellant] described his pain at this time as "quite considerable" and testified that there was some swelling in the area of the laceration.

On September 16, 2010, [Appellant] saw Dr. Elliot Brownstein. [Appellant] had been a patient of Dr. Brownstein since 2004. [Appellant] indicated that he only treated with Dr. Brownstein one time [] regarding the injury to his leg. [Appellant] did not have health insurance at this time.

Dr. Brownstein evaluated [Appellant's] injury and diagnosed [Appellant] with peroneal nerve palsy. Dr. Brownstein prescribed physical therapy and Percocet or some other pain killer. Dr. Brownstein asked [Appellant] to come back and see him in two to three weeks.

On September 20, 2010, Khushman visited [Appellant] again. Khushman again advised [Appellant] that seeking outside treatment was unnecessary and that the injury would heal naturally. [Appellant] showed Khushman the diagnosis and prescription [from] Dr. Brownstein. Khushman told [Appellant] he essentially agreed with Dr. Brownstein's diagnosis and advised [Appellant] that he would bring him some literature on the

subject, which he later did. Khushman also advised [Appellant] to proceed with the prescription for physical therapy. [Appellant] described the condition of his leg and foot at this point as "[e]xtreme pain, inability to move it very well from side to side and then up and down."

The swelling around the laceration on [Appellant's] shin extended to his ankle, which was severely bruised and "purpling." [Appellant] testified that a day or so before seeking treatment at a hospital emergency room, "I put my finger down between some of my toes, and I could feel some flesh, genuine flesh and bone…[and I] pulled up all this gunk, this black, gangrenous gunk. And I knew I was in trouble." By the time [Appellant] went to Chestnut Hill Hospital on September 29, 2010, his toes were turning black. [Appellant] was in extreme pain and could not walk.

On October 6, 2010, [Appellant] underwent a partial amputation of his foot. [Appellant] underwent a total of "four or five" operations, ultimately resulting in the loss of part of his left foot, including all five toes.

[Appellant] is in "constant pain along that foot" and requires a cane to walk long distances. [Appellant] stated that the amputation has resulted in considerable change[s] in his lifestyle. He has difficulty with activities that he formerly enjoyed, such as swimming and hiking. [Appellant] suffers from a gait dysfunction which causes him severe back pain.

Trial Court Opinion, 9/26/2018, at 4-6, (internal footnotes and record citations omitted).

The procedural posture of this case is as follows. Appellant originally filed a complaint against Elliot Brownstein, M.D., Glenside Internal Medicine (a medical practice group herein referred to as "Glenside"), Presbyterian Hospital Medical Center, the Trustees of the University of Pennsylvania, and Khushman, seeking damages arising from improper medical treatment following the injury to Appellant's leg. Appellant's original complaint sounded

- 3 -

in medical negligence. Appellant alleged that Dr. Brownstein, a primary care physician with Glenside, was aware of Appellant's medical history and failed to diagnose and treat Appellant for myeloproliferative disorder.[2] Appellant alleged that this failure, "caused [Appellant] to develop a multitude of issues including but not limited to ischemic left foot/left forefoot gangrene, acute arterial thrombus, and thrombocytosis... [and] a left transmetatarsal amputation." Plaintiff's Pre-Trial Memorandum, 1/4/2016, at 1. Appellant also alleged that Khushman (who, at the time, Appellant believed to be a medical doctor and resident at Presbyterian Hospital Medical Center) similarly misdiagnosed Appellant and, as a result, advised him against going to the emergency room.

Through discovery, Appellant learned that Khushman was not a resident at Presbyterian Hospital Medical Center and was actually not a physician licensed to practice medicine anywhere in the United States or abroad. Thus, Presbyterian Hospital Medical Center and the Trustees of the University of Pennsylvania were dismissed without prejudice by stipulation on April 18, 2016. Dr. Brownstein and Glenside agreed to participate in binding arbitration with Appellant. On November 4, 2016, the arbitrator issued his decision. The arbitrator found that Dr. Brownstein and Glenside were not liable to Appellant.

---

[2] According to Stanford Health Care, "[m]yeloproliferative disorders are a group of rare illnesses that cause blood cells in the bone marrow, including red blood cells, white blood cells, and platelets, to grow and develop abnormally." **See** "Myeloproliferative Neoplasms," Stanford Health Care, Stanford Medicine, https://stanfordhealthcare.org/medical-conditions/cancer/myeloproliferativ-neoplasms.html (Last Visited 08/5/2019).

On April 19, 2017, the trial court confirmed the arbitration award. Khushman did not agree to participate in binding arbitration, so Appellant's case proceeded with Khushman as the sole remaining defendant.

On April 6, 2017, with leave of court, Appellant filed an amended complaint against Khushman. The amended complaint alleged that Khushman was negligent, *inter alia*, in "fail[ing] to properly evaluate [Appellant's] complaints of pain and make proper clinical findings" and "fail[ing] to refer [Appellant] to the hospital for treatment." Amended Complaint, 4/6/2017, at paragraph 55. The amended complaint also alleged that Khushman was liable to Appellant for fraud. Appellant alleged that Khushman falsely represented himself as a doctor, which induced Appellant to rely on Khushman's advice and delay emergency room treatment. Khushman did not file a response to Appellant's amended complaint and the prothonotary entered a default judgment against him on June 1, 2017.

Appellant proceeded to an assessment of damages bench trial on July 19, 2017, pursuant to Pa.R.C.P. 1037(b)(1). Appellant was the only witness to testify at the damages trial; Khushman failed to appear. "[Appellant] introduced [] photographs of his injury[,] Khushman's forged credentials, the [a]mended [c]omplaint, and Khushman's deposition testimony. **[Appellant] did not introduce any medical records[,] expert medical reports[,] or medical testimony**." Trial Court Opinion, 9/26/2018, at 2 (emphasis in original). Appellant explained his relationship to Khushman and Khushman's representations regarding his medical background. Appellant testified that

around September 15, 2010, Khushman examined his injury and advised him that he did not need to go to the emergency room. N.T., 7/19/2017, at 19. Appellant testified that "the leg was hurting" between September 15th and the next visit with Khushman on September 20, 2010, when Khushman again told him "hang in there. It will heal." *Id.* Appellant described the "extreme" pain he felt in his foot on September 29, 2010, when he presented to the hospital, and his devastation at the loss of his toes a few days later. *Id.* at 23, 27. Appellant vaguely described the multiple surgeries the doctors performed on him between September 29, 2010 and October 6, 2010. Appellant removed his shoe and sock to show the court the "result" of the amputation and described the changes in his lifestyle since the amputation. *Id.* at 29-32.

On August 10, 2017, the trial court issued its decision, which awarded Appellant zero dollars in damages.[3] Appellant filed a motion for post-trial relief, alleging that the trial court erred in awarding no damages. On October 12, 2017, after a hearing on the post-trial motion, the court entered an order, which granted Appellant's motion in part and denied it in part. Specifically,

---

[3] Appellant's amended complaint did not demand a sum certain of damages. His prayers for relief simply indicated "a sum in excess of the local arbitration limits[.]" Amended Complaint, at 13. Neither the amended complaint nor the original complaint made a claim for punitive damages. At the trial on damages, Appellant's counsel argued for punitive damages based on fraud, however, Appellant's post-trial motion did not assign error to the trial court's decision not to award punitive damages. Appellant's 1925(b) statement similarly did not include an allegation of error regarding punitive damages. Thus, Appellant did not preserve the issue for appellate review. *See* Pa.R.A.P. 227.1(b)(2). Moreover, Appellant does not argue in his brief that the trial court should have awarded punitive damages.

the amended order confirmed the award of zero dollars in damages, but clarified the basis for the award, stating,

> [t]he court finds that:
>
> a. [Appellant] failed to present sufficient credible evidence regarding the causal relationship between his injury on September 13, 2010 when he injured his leg (or shin) and the amputation involving his toes and any and all other damages claims; and
>
> b. [Appellant] failed to prove by clear and convincing evidence that defendant's fraud was a factual cause of any injury or loss to [Appellant]. **_See Lokay v. Lehigh Valley Co-op. Farmers, Inc._**, 492 A.2d 405, 410 (Pa. Super. 1985) ("Damages for fraud are limited to what losses were immediately and proximately caused by the fraud.").

Trial Court Order, 10/12/2017, at 2. The trial court elucidated that the averments of proximate cause in Appellant's amended complaint were conclusions of law to which no responsive pleading is required. It therefore determined that causation was not deemed admitted by Khushman's failure to respond, and Appellant needed to prove causation at the damages trial. Moreover, the trial court "concluded that without the aid of a medical expert, it could not determine [which], if any, of [Appellant's] injuries were factually or proximately caused by Khushman's wrongful conduct." Trial Court Opinion, 9/26/2018, at 11.

This appeal followed.[4] Appellant presents three issues for our review.

---

[4] On October 19, 2017, the trial court issued an order instructing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). Appellant complied on November 8, 2017. The trial court filed its 1925(a) opinion on December 28, 2017.

1. Did the [t]rial [c]ourt err by essentially reversing [Appellant's] [d]efault [j]udgment and awarding zero dollars?

2. Did the [t]rial [c]ourt err by holding that [Appellant,] at a trial to assess damages, pursuant to 1037(b)(1), must still prove the causation element of its [n]egligence [c]laim with expert testimony?

3. Did the [t]rial [c]ourt err by holding that [Appellant] failed to prove his [f]raud [c]laim by clear and convincing evidence?

Appellant's Brief at 7.[5]

**Overview**

At the center of all three issues raised on appeal is the following question: To what extent does a plaintiff in a tort action, who obtains a default judgment, have to prove a causal connection between the tortious conduct of the defendant and the damages sought? Appellant argues that the trial court erred by awarding zero dollars in damages on the grounds that Appellant failed to present evidence demonstrating a causal relationship between Khushman's actions and the damages sustained by Appellant. Appellant asks this Court to vacate the decision of the trial court and remand for a new assessment of damages hearing.

The factual basis of Appellant's claims is that Khushman, "falsely represented himself as a doctor and his advice as legitimate medical advice.

---

[5] Appellant frames his third issue in a manner that suggests a challenge to a ruling which held that he did not establish liability for his fraud claim. The development of this issue in Appellant's brief, however, shows that Appellant challenges only the trial court's conclusion that he is entitled to damages which he shows are causally linked to Khushman's admitted fraudulent conduct.

[Appellant] relied on that advice, and as a result, delayed seeking legitimate medical treatment for his injury." Appellant's Brief at 36. Appellant argues that by virtue of the default judgment, he was entitled to damages for both the negligence and fraud claims, without providing expert medical evidence regarding causation. The following exchange between the trial court and Appellant's counsel, which took place at the hearing on Appellant's post-trial motion, highlights the precise issue at the heart of this case.

> **The Court**: So to get right to the chase, it is your belief that [Appellant] was not required to provide expert testimony with respect to medical causation as part of your burden of proving damages at an assessment-of-damages trial?
>
> . . .
>
> **The Court**: So, for instance, in answering my question, suppose [Appellant] said as a result of dropping furniture on his shin, you know, he developed some sort of disorder in his knee that required reconstructive surgery several weeks later. Should I have included that, too, in the amount of damages to be awarded to [Appellant]?
>
> **Mr. Bravette**: Because [Khushman] failed to respond to the [c]omplaint and everything would be deemed [] true, then in that case, yes, Your Honor.
>
> **The Court**: So if he came in and said that he developed an ear infection or problem with his teeth or a neurological or cardiological problem[]—in other words, **everything [Appellant] would testify to at the assessment of damages trial, I must, as a matter of law, include it in the assessment of damages because you already obtained a [default judgment] against [Khushman]**; is that your view?
>
> **Mr. Bravette**: Yes, Your Honor.

N.T., 10/11/2017, at 8-9 (emphasis added). Appellant's contention, in essence, is that the default judgment established liability, and therefore

causation, for purposes of both the negligence and fraud claims. Appellant thus concludes that he needed only to show the extent of the damages he suffered, not that those damages were the result of Khushman's actions or inactions. We disagree.

Appellant relies on Pennsylvania Rule of Civil Procedure 1037(b)(1) to support his view that he had no obligation to present evidence of causation at the assessment of damages trial.[6] Pa.R.C.P. 1037(b)(1) states the following.

> (b)  The prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time a pleading to a complaint which contains a notice to defend or, except as provided in subsection (d), for any relief admitted to be due by the defendant's pleadings.
>
> (1)  The prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the **damages shall be assessed at a trial at which the issues shall be limited to the amount of damages.**

Pa.R.C.P. 1037(b)(1) (emphasis added).

We are mindful that "[t]he interpretation and application of a Pennsylvania Rule of Civil Procedure presents a question of law. Accordingly, to the extent that we are required to interpret a rule of civil procedure, our standard of review is *de novo*, and our scope of review is plenary." **Keller v. Mey**, 67 A.3d 1, 5 (Pa. Super. 2013), *quoting* **Gray v. Buonopane**, 53 A.3d 829, 834 (Pa. Super. 2012).

---

[6] Appellant cites no case law to support this contention.

- 10 -

Appellant argues that, "issues of duty, breach, and causation are not relevant to damages assessment[s] after a default judgment is obtained[.]" Appellant's Brief at 24. However, the case upon which Appellant relies for this proposition, *Burkey v. Burkey*, 1998 WL 254005 at 3 (E.D. Pa. 1998), is inapposite and not controlling on this Court.[7]

At the outset, we note that *Burkey* is readily distinguishable for two reasons. First, the facts of this case and the type of harm involved resemble a medical malpractice action, which under MCARE[8] would require expert medical testimony on the issues of duty, breach, and causation. *Fessenden v. Robert Packer Hosp.*, 97 A.3d 1225, 1229 (Pa. Super. 2014). We also note that Khushman is not, in fact, a licensed physician. Our task is further complicated by the fact that Khushman has completely ceased participation in this matter: he did not file a petition to open or strike the default judgment, he did not attend the assessment of damages trial, and he did not file a brief or take part in any of the proceedings on appeal. The complete lack of adversarial development of this action has significantly hampered our task of appellate review. Indeed, no one has cited, and we have been unable to

---

[7] *Burkey* involved a plaintiff who fell and was injured on the defendants' steps. The trial court in *Burkey* found that expert testimony was not necessary for a fact-finder to determine that a scar would remain for the foreseeable future. The case did not in any way address the causation question at issue here.

[8] The Medical Care Availability and Reduction of Error Act ("MCARE"), 40 P.S. § 1303.101 *et seq*.

- 11 -

locate, any Pennsylvania case law that addresses the causation and damage issues implicated in this appeal. However, a review of how other jurisdictions have addressed the causation question at issue informs our disposition of the matters raised herein.

**Default Judgments Generally**

A default judgment operates as an admission by the defendant of all the well-pleaded facts alleged in the complaint. *Wilson v. Maryland Cas. Co.*, 105 A.2d 304, 312 (Pa. 1954). Generally, "[b]y virtue of entering [a] default judgment on the docket, the Prothonotary precludes the opponent from challenging his or her liability." *Mother's Restaurant, Inc. v. Krystkiewicz*, 861 A.2d 327, 335 (Pa. Super. 2004).

Once the court enters a default judgment and the time for appeal expires, the defaulting party cannot collaterally attack the judgment on the grounds that the pleadings were insufficient to support it. *Signora v. Liberty Travel, Inc.*, 886 A.2d 284, 291-292 (Pa. Super. 2005), *overruled on other grounds by* *Andrews v. Cross Atl. Capital Partners, Inc.*, 158 A.3d 123 (Pa. Super. 2017). In these situations, a default judgment can conclusively resolve issues that are purely questions of law. *Id.* Where a defendant did not petition to open or strike a default judgment, liability is conclusively established for purposes of appeal. *See Gall v. Crawford*, 982 A.2d 541, 564 (Pa. Super. 2009) (in an action based on breach of contract for the sale of real estate, defendant's argument on appeal that plaintiff's complaint failed

- 12 -

to plead every element of the contract was an impermissible collateral attack on the entry of the default judgment and liability was conclusively established).

Here, Appellant's amended complaint, coupled with the default judgment, established that Khushman falsely portrayed himself as a doctor and undertook to provide medical treatment and care to Appellant. Further, it was established that Khushman's statements and conduct caused Appellant to delay seeking proper medical treatment. As such, in light of the default judgment, Appellant conclusively established that Khushman was liable under negligence and fraud theories for his actions.[9] For the reasons that follow,

_____

[9] Based on the amended complaint, Appellant's default judgment on the negligence count would likely have been voidable by Khushman, had he petitioned to strike the judgment. To sustain a negligence action, Appellant needed to plead that Khushman owed him a duty, that he breached that duty, that Khushman's breach was the proximate cause of Appellant's harm, and that Appellant suffered actual damages. Duty is a question of law. *Thierfelder v. Wolfert*, 52 A.3d 1251, 1264 (Pa. 2012). Appellant's amended complaint imposes an extremely heightened standard of care on Khushman, who is not a physician. Appellant's allegations of negligence in the amended complaint include failure to order various tests, failure to make a diagnosis of vascular insufficiency, failure to properly treat Appellant based on his medical history, and failure to refer Appellant to the hospital. Amended Complaint, 4/6/2017, at paragraph 55. There is a good argument to be made that such duties cannot be imposed on a layperson. However, Khushman failed to defend this action or move to strike the judgment, thus, we do not consider these issues.

however, we find that while a default judgment establishes liability—legal responsibility—it does not by itself entitle a plaintiff to all claimed damages.[10]

**Default Judgments, Causation, and Damages**

Although no Pennsylvania court has explicitly addressed the question of whether a plaintiff in a negligence action who obtained a default judgment has the burden, at a trial for damages, to prove that his or her injuries were caused by the defendant's negligence, courts in other jurisdictions have addressed just that issue. A Texas case, **Morgan v. Compugraphic Corp.**, 675 S.W. 2d. 729 (Tex. 1984), is particularly instructive. In that case, the plaintiff filed a complaint against the defendant under a theory of negligence for injuries she sustained as a result of inhaling chemical fumes released from a typesetting machine. The plaintiff obtained a default judgment based on the

---

[10] Notably, Appellant's amended complaint is poorly drafted. It simply restates much of what was alleged in the original complaint, including allegations against and references to parties that were dismissed from the action long before Appellant filed the amended complaint. There is language in the amended complaint which seems to allege that Khushman was the proximate cause of Appellant's harm. However, as the trial court noted in its opinion, Appellant's amended complaint references only Presbyterian Hospital Medical Center and the Trustees of the University of Pennsylvania as being a "substantial factor and the legal cause of [Appellant's] harm." Amended Complaint at 56-57. Presumably, this is a simple drafting error. Where causation and damages are the crux of the case, however, drafting errors and broad, general allegations of causation in the amended complaint are problematic. **See Thomson v. Wooster**, 114 U.S. 104, 111 (1885) ("The bill, when confessed by default of the defendant, is taken to be true in all matters alleged with sufficient certainty; but in respect to matters not alleged with due certainty, or subjects which from their nature and the course of the court require an examination of details, the obligation to furnish proof rests on the complainant").

defendant's failure to answer the complaint. After a hearing on damages, at which only the plaintiff testified, the court awarded the plaintiff $200,000.00 in damages. The defendant appealed to the Dallas Court of Appeals. The appeals court held that the plaintiff had the burden of proving that her injuries were proximately caused by the defendant, which she had not done, and remanded the case for a trial on the merits. Morgan appealed that decision to the Supreme Court of Texas. The Supreme Court of Texas reached the conclusion that the plaintiff was, "required to prove a causal nexus between her injuries and her exposure to chemical fumes." *Id.* at 731. In so holding, the Supreme Court of Texas reasoned:

> In a personal injury case, the plaintiff typically alleges that the defendant's conduct caused an event—an automobile accident, a fall, or in this case, the release of chemical fumes—and that this event caused the plaintiff to suffer injuries for which compensation in damages should be paid. Thus, at trial [for damages] the plaintiff must establish two causal [n]exuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries.
>
> The causal nexus between the defendant's conduct and the event sued upon relates to the liability portion of plaintiff's cause of action. Here, we use the term "liability" to mean legal responsibility for the event upon which suit is based… **It is this causal nexus between the conduct of the defendant and the event sued upon that is admitted by default**…
>
> Whether the event sued upon caused any injuries to the plaintiff is another matter entirely. The causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action. Even if the defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled. This is true because the plaintiff is entitled to recover damages only for those injuries caused by the event

made the basis of suit; **that the defendant has defaulted does not give the plaintiff the right to recover for damages which did not arise from his cause of action.**

*Id.* at 731-732.

The Second Circuit Court of Appeals has similarly held that a default judgment does not entitle a plaintiff to "a blank check to recover from [the defendant] any losses it ever suffered from whatever source." *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 70 (2nd Cir. 1971), *reversed on other grounds*, *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) (after a default judgment was entered on a complaint that alleged anti-trust violations, "it was incumbent upon [the plaintiff] to introduce evidence showing the extent of the damages **which resulted from** the antitrust violations established by the default judgment") (emphasis added).

> Moreover, the Restatement (Second) of Torts provides,
> The same rules which determine whether the actor's conduct is or is not a legal cause of another's harm are applicable irrespective of whether the relation of legal cause and effect is necessary to establish liability or to establish the amount of damages to be paid where liability is admitted or proved. In the one case as in the other, the actor's negligent conduct must be a substantial factor in bringing about the other's harm[.]

Restatement (Second) of Torts § 454(b).[11] We find these rules governing the inter-play between default judgments (or admitted liability) and proof of

---

[11] Our Supreme Court has not adopted this provision of the Restatement (Second) of Torts. Nevertheless, that Court "has not hesitated to adopt sections of the Restatement (Second) of Torts (1965) when our common-law precedents varied from the Restatement or when the Pennsylvania common law provided no answer. ***See***, ***e.g.***, ***Reitmeyer v. Sprecher***, 243 A.2d 395

damages, while not explicitly outlined in Pennsylvania case law, are consistent with Pennsylvania jurisprudence.

We examine prior Pennsylvania cases to demonstrate this conclusion. Our decision in *Gall v. Crawford*, 982 A.2d 541 (Pa. Super. 2009) involved a contract for the sale of real estate in which the Crawfords agreed to sell, and the Galls agreed to buy, a parcel of land in Allegheny County for $30,000.00. The Galls paid the purchase price to the Crawfords, but neither party attended the closing on the scheduled date. Thereafter, the Galls filed a complaint seeking a decree ordering the Crawfords to deliver the deed to the property, lost profits from rental income, damages for lost use, and attorney's fees. The complaint also asked the court to issue a preliminary injunction prohibiting the Crawfords from selling, leasing, or otherwise encumbering the property. The parties agreed to a stipulated preliminary injunction. The Crawfords did not respond to the Galls' complaint and the prothonotary entered a default judgment against them "for liability only, damages to be assessed at trial[.]" *Id*. at 544 (internal quotation omitted). The Crawfords did not file a petition to open or strike the default judgment, and the case proceeded to a bench trial on damages. Ultimately, the court ordered the Crawfords to deliver the

---

(Pa. 1968) (adopting § 357); *Philadelphia Elec. Co. v. Julian*, 228 A.2d 669 (Pa. 1967) (adopting §§ 416 and 427); *Webb v. Zern*, 220 A.2d 853 (Pa. 1966) (adopting § 402A); *Jesko v. Turk*, 219 A.2d 591 (Pa. 1966) (adopting § 339)." *Gilbert v. Korvetter*, *Inc.*, 327 A.2d 94, 100 (Pa. 1974) (adopting § 328D).

deed to the Galls, but denied the Galls' request for damages from lost rent and use of the property. Both parties appealed.

We affirmed the trial court's decision not to award damages to the Galls for lost rent and lost use of the subject property, despite a default judgment having been entered on a complaint that alleged such damages. Our Court's discussion of this issue is instructive.

> [The Galls] first contend that [the Crawfords] conceded the issue of damages by virtue of the default judgment which admitted the allegations of damages in [the Galls'] complaint. We disagree. [The Galls] did not include any specific amount of damages in their complaint. Thus, their contention that [the Crawfords] admitted to a certain amount of damages is belied by the record. Furthermore, it was [the Galls] who requested a trial on the issue of damages. **They cannot now claim it was error for the trial court to hold a trial on the issue of damages simply because they do not agree with the trial court's verdict**.
>
> [The Galls'] alternative contention is that the trial court abused its discretion as it had a clear, undisputed factual basis to award the damages incurred by [them] for the loss of rental income… [W]e disagree with [the Galls'] assertion that the testimony of the parties [at the trial on damages] established that [the Galls'] use of the [p]roperty was interfered with, that they did not obtain any rent from other tenants and could not lease out other portions of the building. This summarization of the "parties'" testimony is disingenuous at best, as [the Crawfords] clearly offered testimony refuting [the Galls'] claim for lost rent and damages… As trier of fact, it was for the trial court to resolve the conflicting testimony regarding [the Crawfords'] alleged lost rent and lost use. It did so, concluding that it was never convinced by a fair preponderance of the evidence that [the Galls] were entitled to these monies[.]

*Id*. at 547-548 (internal quotations and citations to the record omitted) (emphasis added). This determination encompasses the idea that, despite a default judgment, the plaintiff is only entitled to damages actually incurred **as**

- 18 -

**a result** of the defendant's breach. *Gall*, however, involved damages stemming from the breach of a contract for the sale of real estate, not tortious conduct, as is the case in the matter *sub judice*.

## Liability and Damages in Tort

The principle elucidated in *Gall* applies with perhaps even greater force in tort cases where the concepts of liability and damages have always been closely intertwined. The jurisprudence of the Commonwealth of Pennsylvania recognizes that, "in the field of personal injury litigation, [] the issues of liability and damages are generally interwoven and the evidence bearing upon the respective issues is commingled and overlapping." *Stevenson v. General Motors Corp.*, 521 A.2d 413, 422-423 (Pa. 1987), *quoting Brown v. General Motors Corp.*, 407 P.2d 461, 464 (Wa. 1965). *Stevenson* discussed this proposition in the context of a bifurcated trial—where the trial is divided into separate liability and damages portions. In *Stevenson*, a products liability case, the original trial was bifurcated. Following the liability phase of that trial, the jury found for the plaintiff. However, during the damages phase, questions arose regarding possible secondary causes of the accident. The trial court granted the defendant's motion for a new trial on both liability and damages and our Supreme Court upheld that determination.

The instant case involves the same principles but presented in a slightly different context. Because the prothonotary here entered a default judgment against Khushman pursuant to Pa.R.C.P. 1037(b)(1), Appellant technically

established liability and the only issue at trial was the amount of damages to which Appellant was entitled. Despite this posture, Appellant still needed to prove that his injuries and losses arose from the conduct that gave rise to the suit, as **Stevenson** suggests.

Appellant quotes **Knowles v. Levan**, 15 A.3d 504, 507 (Pa. Super. 2011), stating "where liability is admitted, the lone issue is damages…there is no justification to admit into evidence any facts concerning the occurrence or causation of the accident as defendant's admission of liability renders all such evidence irrelevant." Appellant's Brief at 23. **Knowles**, however, is distinguishable from the case at bar. **Knowles** involved a motor vehicle accident in which the deceased defendant caused a head-on collision with the plaintiffs by traveling south in the northbound lane. The quoted passage referred to evidence that the deceased was under the influence of alcohol and cocaine at the time of the accident. Since it was admitted that the deceased defendant caused the collision that injured the plaintiffs, the extent of the defendant's intoxication did not add anything to the question of how much the plaintiffs were owed for the injuries sustained in the accident. At the damages trial, the defendant did not contest that all of the injuries for which the plaintiffs sought damages were caused by the accident. The defendant simply argued that evidence of intoxication would cause the jury to "punish" the defendant for drunk driving. This Court agreed but determined that it was harmless error for the trial court to admit evidence of intoxication. **Knowles**

does not alleviate Appellant's burden to show a causal relationship between the damages he requests and the conduct giving rise to his suit.

Here, the default judgment established that Khushman was liable for negligence and fraud. Appellant alleged many injuries and damages, however, he is only entitled to recover from Khushman for that which was the result of Khushman's tortious conduct. *See Hawley v. Donahoo*, 611 A.2d 311, 312 (Pa. Super. 1992) ("The general rule is that victims must be compensated for all their losses **caused by** the negligence of another.") (emphasis added); *Lokay v. Lehigh Valley Co-op. Farmers, Inc.*, 492 A.2d 405, 410 (Pa. Super. 1985) ("Damages for fraud are limited to what losses were immediately and proximately caused by the fraud.").

Many other Pennsylvania cases have alluded to the issue presented in the present case. In *King v. Fayette Aviation*, 323 A.2d 286 (Pa. Super. 1974), this Court held that the trial court erred in opening a default judgment entered against the defendant for failure to answer. In so holding, however, this Court concluded that the plaintiff was not entitled to a judgment in the amount claimed, despite reinstatement of the default judgment. Instead, plaintiff's damages were limited to the reasonable value of the subject aircraft, to be determined at an assessment of damages trial. *Id.* at 287. Underlying this conclusion is the idea that, even where a default judgment is obtained, a defendant can only be responsible for the actual damages that he caused.

In *McArdle v. Panzek*, 396 A.2d 658, (Pa. Super. 1978), the defendant, Panzek, admitted liability for a car accident that injured plaintiff, McArdle. At the trial on damages, McArdle sought recovery for her medical expenses and sclerosis of her sacroiliac joints. McArdle's only medical expert testified that he could not express an opinion as to whether the sclerosis was caused by the accident for which Panzek had admitted liability. This Court held that, under the circumstances, McArdle was required to prove by expert medical testimony that her sacroiliac injury was caused by the automobile accident. Those circumstances included the following facts.

> (1) the injury did not manifest itself until two and a half months after the accident, (2) an examination which occurred shortly after the accident revealed a different, temporary, and more minor injury to the same part of the body where a more serious injury later developed, (3) the first examination also failed to show any symptoms of the injury which later developed, and (4) the injury was to a healthy woman with no prior history of the injury suffered.

*McArdle*, 396 A.2d at 662. "Where there is no obvious causal relationship, unequivocal [m]edical testimony is necessary to establish the causal connection." *Id.* at 660 (citation omitted). This is so even where liability has been established.

Similarly, in *Neison v. Hines*, 653 A.2d 634 (Pa. 1995), the defendant, Hines, conceded liability for a motor vehicle accident in which she rear-ended the plaintiff, Neison. At trial, the sole issue to be determined by the jury was the amount of damages to which Neison was entitled for pain and suffering. The impact of the accident caused Neison's head to be thrown backward,

"shattering the rear window of her two seat sports car." *Id.* at 636. Neison introduced the testimony of two doctors, "who both opined that the injuries Ms. Neison suffered were directly caused by the automobile accident." *Id.* Hines presented the testimony of another doctor, who examined Neison two years after the accident. He opined that Neison suffered neck and shoulder blade sprains, which had healed by the time he conducted his examination. The jury returned a verdict in favor of Hines, awarding no damages to Neison. The trial court granted Neison's post-trial motion for a new trial on the basis that the verdict was contrary to the evidence and the instructions of the court. This Court reversed the trial court's order granting a new trial, and the Pennsylvania Supreme Court granted *allocatur* and ultimately reinstated the decision of the trial court.

In its opinion, our Supreme Court stated that "the uncontested evidence amply demonstrates that Ms. Neison was involved in a violent automobile accident and suffered soft tissue injuries, a cervical sprain, and a herniated disk." *Id.* at 637. The Court noted that a severe collision such as this would undoubtedly lead to painful injuries, "although the evidence offered at trial left room for disagreement as to whether the pain resulting from Ms. Neison's injuries was as severe as she claimed or whether the accident was in fact causative." *Id.* at 638. This clearly indicates that although Hines admitted liability for the accident that injured Neison, Neison was only entitled to collect damages for pain that was caused by the accident.

Our Supreme Court's rationale in **Neison** mirrors that of the Texas Supreme Court in **Morgan, supra**. In **Neison**, the defendant conceded liability for negligence in the event sued upon, *i.e.*, the car accident. The plaintiff, however, was still required to prove that the damages she alleged were the result of the accident—that there was a causal nexus between her pain and the defendant's negligence. Our Supreme Court found the fact that "[b]oth [of] Ms. Neison's experts unequivocally testified that she suffered objective injuries **directly attributable to her accident** with Ms. Hines" to be dispositive in its determination that the trial court did not abuse its discretion in ordering a new trial where the jury awarded no damages. **Id.** at 640 (emphasis added).

In his brief, Appellant essentially acknowledges the problem that both this Court and the trial court have encountered in this case.

> [W]ith respect to [Appellant's] negligence claim, the question is not whether Mr. Khushman committed medical malpractice or performed below the applicable standard of care, which does not apply here as Mr. Khushman is not a licensed doctor. Instead, the question is whether Mr. Khushman's negligence caused [Appellant] to delay seeking legitimate medical treatment and **what damages stemmed from that delay**.

Appellant's Brief at 26 (emphasis added). As previously stated, by virtue of the default judgment, Appellant established that Khushman's culpable conduct caused him to delay seeking treatment. At the damages trial, Appellant needed to show whether and to what extent, in terms of both physical

consequences and monetary damages, the delayed treatment exacerbated his original injury, up to and including the need for amputation.

Appellant did not present sufficient evidence of a causal connection between that delay and the ultimate partial amputation of his foot. At the assessment of damages hearing, Appellant testified that Khushman visited him on September 20, 2010, and advised him to see a physical therapist. Appellant presented at the hospital on September 29, 2010, nine days after the last visit with Khushman. Appellant testified that, upon arrival at the hospital, a nurse indicated that his foot was gangrenous. Then, Appellant stated, "[t]he physician woke me up and said, [w]e performed surgery on you for these reasons." N.T., 7/19/2017, at 26. Appellant did not identify what "those reasons" were. When asked by counsel when he learned that his foot would be partly amputated, Appellant stated the following. "That was after the 29th. I had the leg surgeries on the blood vessels on the 29th, recuperated on the 30th, and then I had the amputation on October the 6th." *Id.* The record contains absolutely no medical explanation of the reason for the initial "leg surgeries" or the amputation, or whether those surgeries were necessitated by Appellant's delay in presenting to the hospital.

The trial court asked Appellant's counsel, "[a]re you just asking me to take judicial notice that a laceration to the shin will result in an amputation of the toes?" N.T., 7/19/2017, at 43. Appellant's counsel stated, "those dots have been connected, [Khushman] has already admitted them. He's admitted

them—the allegation[] in the [c]omplaint is that the laceration to the shin led to a loss of blood in his foot, which led to ultimately the amputation." N.T., 7/19/2017, at 44. In actuality, the complaint does not contain that allegation.[12]

In a similar exchange at the hearing on Appellant's post-trial motion, Appellant's counsel attempted to explain the causal connection between Khushman's conduct and the amputation of Appellant's toes.

> **The Court**: [A]re you saying that he developed an infection on the bottom part of his foot?
>
> **[Counsel]**: I don't believe that it was an infection. I believe that it was a condition caused by the lack of proper treatment to his original injury.
>
> **The Court**: Yeah. But I am trying to understand medically the relationship between the partial amputation of some of his toes and the cut on his shin; that's the problem. I don't think you're able to actually articulate it, and [Appellant] wasn't either."

N.T., 10/11/2017, at 7.

_____

[12] As noted previously, the allegations of causation in Appellant's amended complaint were very broad and general. *See* Amended Complaint, 4/6/2017, at paragraph 50 ("[Appellant's] grievous injuries were caused by the wrongful acts, negligence and carelessness of all Defendants and their agents, ostensible agents, servants and employees."); *Id.* at paragraph 93, ("As a direct result of the fraudulent treatment and care rendered by Defendant Khushman, [Appellant] suffered extensive physical pain, mental anguish, disfigurement and other economic and non-economic losses."). The amended complaint does not refer to a loss of blood in the foot. Moreover, it does not allege that such a loss resulted in the amputation of Appellant's toes.

Counsel's "belief" that Appellant's substantial injuries were caused by Khushman's actions or inactions is insufficient to determine that Appellant is entitled to damages from Khushman for those injuries. We agree with the trial court that expert medical testimony was necessary to explain the nature and extent of Appellant's injuries which flowed from Khushman's culpable conduct. Based on the record before us, it is entirely unclear whether Appellant's delay in presenting to the hospital caused him to develop the various conditions he listed in the amended complaint.[13] Moreover, Appellant needed an expert to testify that the delay caused by Khushman led to the "open left femoral thrombectomy, left leg angiogram, left femoral to below knee popliteal bypass with translocated non-reversed saphenous vein" and "transmetatarsal amputation." Amended Complaint, 4/6/2017, at paragraphs 47 and 49. The average layperson could not make the determination, without expert testimony, that these disorders and surgeries were the result of Appellant's delay in presenting to the hospital.

In conclusion, a plaintiff who obtains a default judgment in a tort action is not relieved of his obligation to provide evidence of a causal connection between the defendant's tortious conduct and the damages for which he seeks

_____

[13] Appellant was diagnosed with the following, "ischemic left foot/left forefoot gangrene; acute arterial thrombus…myeloproliferative disorder causing thrombocytosis; and hypercoagulable gene mutation[.]" Amended Complaint, 4/6/2017, at paragraph 47.

relief. In this case, Appellant needed to present expert medical testimony on that issue as it relates to most of his claimed damages.

We agree with the trial court that "[Appellant] failed to present sufficient or credible evidence regarding the causal relationship between his injury on September 13, 2010…and the amputation involving his toes[.]" Trial Court Order, 8/10/2017, at paragraph 9. We disagree, however, that there was insufficient evidence to award "any and all other damages claimed." *Id.* Appellant testified that on September 15, 2010, Khushman evaluated his leg injury and told him it was unnecessary to seek additional treatment. He also testified that his leg was in pain between that day and the next time Khushman visited him on September 20, 2010. We believe that Appellant presented uncontested evidence regarding his pain and suffering that was attributable to the progression of his leg injury and his delay in seeking legitimate treatment. We remand for a hearing on damages, narrowly limited to pain and suffering related to the advancement of the leg injury caused by Khushman's advice to delay seeking additional treatment.

Judgment affirmed in part and reversed in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/19